**J. E. BAKER CO. v. KENNEDY REFRACTORIES CO. et al.**

(District Court, E. D. Pennsylvania. August 29, 1917.)

No. 1613.

PATENTS ⚖══328—VALIDITY AND INFRINGEMENT—MAGDOLITE.

The Baker patent, No. 1,063,102, for a product called by the patentee magdolite, obtained by first burning dolomite rock in a cupola and then roasting it in a rotary kiln, is void as not for a new material or product, the so-called magdolite being in fact dolomite given a fuller and better treatment by double burning, which renders it a good substitute for Austrian magnesite in the steel industry; also *held* not infringed.

In Equity. Suit by the J. E. Baker Company against the Kennedy Refractories Company and others. On final hearing. Decree for defendants.

Cyrus N. Anderson, of Philadelphia, Pa., L. S. Bacon, of Washington, D. C., and Frederick P. Fish, of Boston, Mass., for plaintiff.

J. H. Brickenstein, of Washington, D. C., and Fraley & Paul, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge.   Aside from any purely legal view of this controversy what has been called "the human-side view" is Janus-faced.   The plaintiff advances, as he is justified in doing, this strong claim of merit that at a very critical stage in the experience of the steel industry, which is now of such overwhelming importance to our country and through it to the cause of humanity throughout the world, he came forward with a substitute for Austrian magnesite, the want of which would have crippled, if not paralyzed, that branch of the steel industry which has heretofore been dependent upon it for refractory materials.   The benefit thus conferred upon mankind is so impressive in its mere statement that upon its importance we need not enlarge.   The defendant, on the other hand, asserts, as it also has justification in doing, that the plaintiff cannot be given the exclusive property rights for which he asks without doing violence to principles of law the disregard of which has the most far-reaching consesequences.   Thus stand the general considerations which bear upon this controversy.

The question of the strict legal rights of the plaintiff is open to the application of arguments of almost equal weight.   The right is claimed under letters patent No. 1,063,102 issued May 27, 1913.   This is a product patent.   The exclusive right of the plaintiff to the process, also claimed as an invention, by which this product is produced, is not here in controversy.   The questions to be answered may be formulated as involving the inquiry whether this product is merely the result of a natural process, or whether it be a thing manufactured, and whether the product secured by the defendant, if it be a manufactured product, is the same as the product patented by the plaintiff.   The shorter the path is made which leads the mind to a judgment upon either of the propositions advanced in the answer to these questions, the greater the satisfaction with which the mind rests upon the conclusion, whatever it is.   There is either little room for discussion between the questions and their answers, or the questions are made so broad and the material for discussion, if it is all admitted, is so abundant that the discussion becomes interminable.   The reasons which lead one to a conclusion may be stated in such small compass as that we have barely, if anything, more than a statement of the conclusions reached.   A statement of all the considerations which enter into a discussion of the correctness of the conclusions thus reached is almost unending.   Reduced to its simplest statement, what the plaintiff came upon (and thus in consequence in the true etymological sense invented) was that dolomite, after being burned in an ordinary cupola and then reburned in a rotary kiln, made a practically good substitute for Austrian magnesite for certain refractory uses.   The inventor himself thus defines his contribution to the art.   He had been burning dolomite in a cupola and selling it for its then limited uses.   He tried to expand the field of its usefulness by using a rotary kiln.   The experiment was a failure in the sense that he had no appreciably better result.   The thought which proved to be a very happy one for him and for the steel industry, occurred to him to reburn the dolomite in the rotary kiln after it came from the cupola.   The result was most satisfactory and gratify-

ing. Here, beyond doubt, we had invention and a most valuable result. A most useful art had been most helpfully, as well as most opportunely, promoted, and to the inventor of this process of making this new product (if it be a product), or in any event of producing this new result, justly belongs all the encouragement which the law in the exercise of the most liberal policy consistent with its being a wise policy can bestow.

The line of distinction which must be drawn is one such that, short of mere trade terminology, our language does not supply us with words or phrases by which to denominate the things which lie on either side of this line except words of broad generalization. The expressions "raw" dolomite, "roasted" dolomite, "burned" rock, "double burned," and the like suggest, rather than convey, to our minds the thought with which the defendant seeks to impress us. Expressions, on the other hand, which in like manner bring up the thought of a new material, an article of manufacture, a product in the production sense of something produced or created, are employed by the plaintiff. The choice of expression is crystallized in the word "magdolite" as the name by which this new material is designated. We do not see that anything is gained by the use of a baptismal name beyond getting the mind into an habitual attitude toward the subject. Habitually speaking of dolomite which has been subjected to a heating process as "magdolite" tends to create and to deepen the impression that the resulting thing differs from roasted dolomite. There is, in the act of christening, the implication of a new material. Why otherwise give it a name? Such a name is, however, but the guinea stamp, and does not change or affect in any way the thing stamped except the change which is wrought by the fact that the thing has been thus stamped.

The argument addressed to us by counsel has shaken, but has not altered, the conviction that this patentee discovered no more than what he describes his discovery to have been. He found that cupola burned dolomite which had certain limited uses as a substitute for magnesite if re-roasted and thereby more thoroughly burned became a fuller and for all practical purposes a full substitute. He further found that the use of a rotary kiln in the second burning produced satisfactory results. The conviction which lingers in the mind, if it does not remain wholly unshaken, is that to give the discoverer of this result a·product patent is to grant him an exclusive proprietary right to the mere result of the operation of natural causes. The legislator who was framing a patent law might be well asked to weigh the consideration that such a discovery was new, and that the fruit of it had the highest value and utility, and that a real contribution had been made to the possessions of mankind, and that the contributor should be rewarded. The man who discovers that and how any natural product may be artificially made has made a like contribution. The distinction between process and result is clear. The grant of an exclusive proprietary right to the one and its denial to the other involves no inconsistency of attitude or treatment, because the fact remains that, although the process is new, the result is old.

We confess to a feeling of hesitation in stating adherence to the conclusion indicated. This is due to several considerations, each of which has its influence upon the mind. One is the experience of this patent in the Patent Office as disclosed by the file wrapper. Another is the argument addressed to us by counsel for plaintiff. The least which can be said of it is that it stops, if it does there stop, only just short of convincing power. Still another is the seeming reluctance of the able and experienced counsel for defendant to plant the defense upon this finding, or at least the seeming preference to rest it upon the finding next considered. When one is confronted with the fact that there is a concurrence in the conclusions reached by highly trained and ripened judgments which differs from the conclusion to which your own mind inclines, the correctness of your own conclusion may well be doubted, and it cannot be put forward except with reluctant hesitation. None the less one charged with the duty and responsibility of making a finding must make it according to the convictions of his own judgment, and no matter how much he might prefer to yield it to the judgment of others, he cannot do so unless that judgment be authoritative and binding upon him as controlling. We therefore state our conclusion to be, and content ourselves with a restatement of the conclusions already indicated, that to uphold the validity of this patent would grant to the patentee an exclusive ownership in what is a mere result of the application of natural forces and processes, and that validity must be denied on the principle supporting the rulings in many cases to which Evans v. Warren Bros., 240 Fed. 696, —— C. C. A. —— is a sufficient reference. The brief submitted by defendant presents the thought with clarity. In contrasting the results attained the plaintiff is truly said to have found a way of supplying the trade with a well-burned dolomite, and although the defendant may have found a way to supply a more thoroughly burned dolomite, the latter product was still a burned dolomite, as was that of the plaintiff. Improvement in quality or advancement in degree, if there be such, does not change the character of the thing produced. The thought expressed is clear enough, but it gives firmer adherence to the other thought that precisely the same contrast can be made between the "standard" product and "magdolite." If kendymag be simply, at the most, a better grade of magdolite, then magdolite is simply a better grade of cupola burned dolomite.

The other question involved, or that of infringement, calls for, as it seems to us, the same answer. It resolves itself into the question of identity of results, and this is in turn determined by the finding of whether magdolite be a new material or merely dolomite which has been subjected to heat. If it be a new material possessing the individual characteristics of being a uniform product free from (for the purposes of its intended use) objectionable ingredients and having the quality of rejecting moisture, or of being slow to absorb it, then it is just what kendymag is. The processes by which the magdolite and kendymag results are reached differ in this. Magdolite, viewing the whole treatment to which it is subjected, starts as a dolomite rock, and, preserving its integrity as rock, remains dolomite to the end. There are

during the process changes in form. The rock is, for a purpose, broken into fragments of a substantially uniform size, which may be described as the size of the stone broken for use as railroad ballast. This is a step toward the size to which the rock is reduced to be used, and yet large enough to meet the conditions of cupola burning to which it is next subjected. It is then further reduced in the size of the fragments and subjected to a further burning in a rotary kiln. The addition of iron may be ignored, although in another aspect of the case this has an important bearing upon the merits of the claim of the patentee. The result is magdolite in name and well "roasted" or well "burned" or "double burned" dolomite in fact, if described with respect to the treatment to which it has been subjected, or is "shrunk" dolomite if described with respect to one effect the subjection to heat has upon it. The defendant (dealing with his process in general terms) disintegrates the rock, reducing it to powder and following an intimate mixing by means of or without dissolving it in water, and the burning of it under very high temperature conditions secures a cindered product or kendymag. This is claimed to be a synthetic product. The integrity of the rock has been destroyed. It is no longer rock, but a product made from dolomite, and is no more rock than cement or rather cinders which are ground into the cement of commerce is the rock from which it is obtained. The two results, therefore, belong to different arts, and the defendant's product properly to the calcining art, with which the result attained by the plaintiff has no concern.

That the motive of production is the same and the uses to which the things turned out can be and are intended to be put the same is aside from the legal point involved. The point is met by the fact that the fruits of the efforts of each are different, and, assuming each to be a product, the one is not the other, and in consequence the producer of the one is not trespassing upon the field which properly belongs to the producer of the other. We might feel sure that kendymag is a true synthetic product, and magdolite, as described in the patent application, merely burned dolomite, if one feature of this case had been made clearer than it has been. The furnace practice in the use of dolomite was to add iron. There was apparently a difference of opinion whether this addition of iron was of any real advantage. It would further seem that no one troubled himself to find out why it was a help if it was one. The use of iron played no part in the process described in the patent application of the plaintiff, and no added iron entered as an ingredient of his patented product. He had in use two rotary kilns differing, so far as the evidence discloses, only in size. More out of deference to what he thought to be a prejudice of the furnace men in the use of iron than to any belief that magdolite would be thereby improved, he added a small percentage of iron. He was not able to discover any appreciable difference in the output. He did find, however, that the output of the larger kiln was increased, or at least the operation of the kiln was facilitated. He found also that the result was the reverse of this in the use of the smaller kiln. Thereafter plaintiff's practice was to add iron in the operation of the one kiln and not the other, and the magdolite he sold to the trade was a mixture of the

two outputs. Kennedy, in his process, adds iron, varying the percentage according to the character of the rock which from time to time his quarries supply; the rock output not being uniform. He also does not seem to have recognized the fact, if it be one, that the added ingredient gave anything of value to the product. He also regarded its use as a yielding to the prejudices of the furnace men, and valued it merely as a "talking point" in reaching the trade. There is room, however, for the finding that iron plays a part in rendering both magdolite and kendymag an acceptable substitute for magnesite. The iron enters into chemical combination with the other ingredients or some of them forming in the kendymag process, through the intimate and thorough mixing of the material and its subjection to a very great heat, a true synthetic product, spoken of in the record as a ferrate. In the magdolite process the effect is limited to the outer surface of the particles of rock into which the dolomite is crushed, incasing them in an envelope or skin. The result is in each instance a lessened tendency to absorb moisture. Two consequences flow from this. One is that each product is improved. The second is that the products are different. One process begins with dolomite and ends with a resultant output, which is still the same rock that has been more or less thoroughly burned and thereby the water and carbonic acid driven off and the particles shrunk, but preserving its integrity as rock. The other process begins with selected portions of the rock to the pulverized material of which iron in the proper proportion is added and the two so thoroughly mixed and subjected to such heat as that the process ends in a clinkered product which is not dolomite rock, but made up of ferrates, silicates, and aluminates of lime and magnesia which could not be found in the natural rock. The two products are not the same, although they possess in varying degrees the same qualities and characteristics.

We find the fact to be, as asserted by the plaintiff, that magdolite and kendymag considered as a product is each "uniform, free from objectionable ingredients, and slow to absorb moisture." We find, however, that the possession of these qualities springs from different causes. In magdolite the particles of rock are shrunk, and in some of the commercial product incased in the skin or envelope spoken of and thus made repellant of water for a time. The water is held back from contact with the material of which the particles are composed. When it gains entrance, as it does in time, the material slacks. In kendymag the product itself is one which possesses the quality or characteristic of water resistance and does not slack.

There is no occasion to follow the very interesting discussion of all the considerations which bear upon the questions involved in this case. The argument is in able hands, and may be so left. In reaching the conclusion adverse to the plaintiff which we have reached, we have done so on the merits of the questions involved, as they have appealed to us, uninfluenced by the consideration which is met by the very sensible and patriotic suggestion made by the plaintiff that any injunction process to which the plaintiff was found to be entitled be suspended and made inoperative during the duration of the war. We acknowledge further

to a feeling of gratification that in denying plaintiff's claim to a products patent we leave wholly unaffected his claim of a property right in the process patent which is not before us. The ruling now made affects only claims 2, 3, 4, and 5 of letters patent No. 1,063,102, issued May 27, 1913.

The formal conclusion is that the bill of complaint of the plaintiff should be dismissed for want of equity; and it is so decreed, with costs to the defendant.