## J. E. BAKER CO. v. KENNEDY REFRACTORIES CO. et al.

### (Circuit Court of Appeals, Third Circuit. November 30, 1918.)

### No. 2389.

1. PATENTS ☞328—CONSTRUCTION—VALIDITY.
    The Baker patent No. 1,063,102, for a material for use in making up, repairing, and replacing linings, etc., of metallurgical furnaces, which consisted of a specially burned dolomite, *held* valid, showing invention.

2. PATENTS ☞250—INFRINGEMENT—PRODUCT PATENT—IDENTITY.
    Where the issue of infringement arises on a product patent, the processes are immaterial, except as they show characteristics of the two products that are either identical or different.

3. PATENTS ☞328—CONSTRUCTION—INFRINGEMENT.
    The Baker patent, No. 1,063,102, for a material for use in making up, etc., linings, etc., of metallurgical furnaces, which consisted of specially burned dolomite, *held* not infringed by defendant's product, which also had a dolomite base; the two products being essentially different.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the J. E. Baker Company against the Kennedy Refractories Company and H. A. Kennedy. From a decree for defendants (244 Fed. 812), complainant appeals. Modified and affirmed.

Frederick P. Fish and J. L. Stackpole, both of Boston, Mass., and Cyrus N. Anderson, of Philadelphia, Pa., for appellant.

J. H. Brickenstein, of Washington, D. C., and Joseph C. Fraley, of Philadelphia, Pa. (Fraley & Paul, of Philadelphia, Pa., on the brief), for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This suit is on Letters Patent No. 1,063,102 for "Material for Use in Making Up, Repairing, and Replacing Linings, etc., of Metallurgical Furnaces," issued May 27, 1913, to John E. Baker. The claims involved are 2, 3, 4 and 5; the issues, validity and infringement. The District Court found the claims invalid, and indicated in its opinion, that, if valid, they are not infringed. 244 Fed. 812. The plaintiff appealed.

The succinct statement of the prior art and of the invention appearing in the patent specification, and the thorough discussion of both in the court's opinion, make an extended presentation of the case unnecessary.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] For linings of metallurgical furnaces and particularly of basic open hearth steel furnaces, a material that is both basic and refractory is required. The basic quality of the material enhances metallurgical reactions; the refractory quality sustains the furnace lining and prolongs its life. Prior to the patent, various kinds of basic and refractory products were used. They were calcined or burned minerals containing magnesia, lime, alumina, silica, and iron. Of these substances, magnesia is the most basic; it is also intensely refractory. Its purest form occurs in magnesite. The best grade of this mineral is found in Austria.

Magnesite contains a large percentage of magnesia and very little lime. In preparing it for use as a furnace lining, it is subjected to a temperature equal at least to the temperature of the furnace in which it is to be placed, in order to expel all volatiles and consume all combustible ingredients. Before the patent, Austrian magnesite was the only satisfactory material used for lining bottoms of basic open hearth steel furnaces.

In addition to foreign magnesites, a rock found in the United States and known commercially and chemically as dolomite is used in repairing furnace linings. Dolomite is a magnesian limestone, containing in varying proportions the same chemical ingredients as magnesite, but differing radically from magnesite in the preponderance of the relatively low basic element of lime over the high basic element of magnesia. The principal objection to a lime base is its tendency to absorb atmospheric moisture, and in consequence to slack, thereby interfering with its proper behavior in the open hearth furnace.

Dolomite, either in its raw state or burned, has long been used for repairing and patching furnace linings under certain conditions, but, being open to objections arising from its lime base, it never has been regarded even remotely as a substitute for Austrian magnesite.

Dolomite, like all furnace lining materials, must be burned before it is used. Prior to the patent, dolomite was burned by two methods, a cupola method and a rotary kiln method. In the cupola method the furnace was charged with alternate layers of coke and raw dolomite rock. After the heat had driven off the moisture, carbonic acid gas, and other volatiles, the material was taken from the furnace and reduced by grinding to the desired granular size. This method was imperfect because it left in the product powdered material, coke brees, cinder, ash, and a small quantity of volatiles. The results were that the product absorbed moisture readily and slacked quickly and combustion of the unconsumed ingredients continued after it was placed in the furnace lining.

Burning in a rotary roasting kiln likewise failed to expel all volatiles from the rock and likewise left the product readily pervious to moisture and consequent slacking. For these reasons, dolomite, burned by one or the other of the trade methods, contained such objectionable features that it was not considered in the same class with Austrian magnesite, either chemically or commercially. The way the art regarded their relative values is shown by the prices it paid for them. Burned dolomite sold for about $4.00 a ton, while Austrian magnesite sold for about $30.00 a ton.

Baker conceived a new method of burning dolomite. Its novelty consisted, not in disregarding and breaking away from either of the old methods, but in employing both of them. On first view this would seem a simple and a natural expedient, whereby the advantages of each method are aggregated in a thoroughly burned product. The result, however, was more than this; it was startling and revolutionary.

In making the product of the patent by his method, Baker first ground the rock to the size of railroad ballast and burned it by the cupola method. He got a product lacking uniformity in the expulsion of volatiles and containing the objectionable ingredients of ash and cinder. This product he ground to the proper size for use in the furnace and then burned it by the rotary kiln method. The double burning produced several novel and highly valuable results. It uniformly condensed the product, uniformly expelled all volatiles, completely eliminated combustible ingredients, and coated at least the surface of its condensed grains or particles by reaction of its chemical constituents in a manner that made them resistent to moisture for a longer time than single burned dolomite and made them correspondingly slow to slack. By the apparently simple expedient of double burning, the patentee got a product chemically and commercially unlike any dolomite product theretofore known, which the metallurgical art, notwithstanding the predominating lime base of the product, accepted at once as the equal of and a fair substitute for Austrian magnesite with its magnesia base. It is manufactured and sold under the trade-name of "magdolite."

The patent in issue being a product patent, we are not concerned with the process by which the product is produced; that forms the subject of another patent to Baker (No. 1,063,013). The first question, therefore, is: Does this product involve patentable invention?

The claims in issue describe the patented product in the following terms, differences in the claims being indicated by the bracketed portions:

As a new article of manufacture, burned dolomite in the form of a granulated mass, the particles (or substantially all of the particles) of which are uniformly substantially free from volatiles (and cinder) and are uniformly condensed (having a substantially uniformly condensed surface part) and (being of a uniform physical character) rendering the same slow to absorb moisture.

The defendant challenged the validity of the claims on two grounds: First, that the patented product is an improvement upon the old article only in degree and excellence; and, second, that the qualities claimed for it are the natural results of thorough burning, and, in consequence, are the mere results of the operation of natural causes. It was on the latter ground that the claims were held invalid. In reaching this decision the learned trial judge realized, and very frankly said, that the issue of invention is so evenly balanced that he yielded with some hesitation to his inclination that invention is wanting. We also realize that in some aspects the issue is close; but after giving the case very full and deliberate consideration we are inclined to the opposite view.

Being of opinion that the product of the patent involves invention and that the claims in issue are valid, it is not necessary to state the grounds of our opinion with the elaboration of which the subject is capable. It is sufficient to say, that, though nothing is added to dolomite rock when it is manufactured into magdolite, so much is taken from it that it is freed of its objectionable features, and it is so transformed that new characteristics, both physical and chemical, are given it, with the result that the product is raised from the low level in which dolomite was regarded by the art as a material for repairing furnace linings to the high level of equality with Austrian magnesite, admittedly the best furnace lining known. We regard magdolite as "a new article of manufacture" in the sense at least of being wholly different from any article previously manufactured and from anything existing in nature, containing elements of novelty and utility in such a degree that its effect upon the arts to which it directly and indirectly relates was immediate and immensely beneficial. While the chemical and commercial values of magdolite were established by its introduction and use as a substitute for Austrian magnesite before the war, its use as a substitute since Austrian magnesite has become unobtainable, has contributed, it may safely be said, in no small measure to the ability of the steel industry of this country to meet the demands which the war has made upon it.

[2, 3] The claims of the patent in issue being valid, the remaining question is one of infringement.

The alleged infringing product is made by the defendant under a patent with which we are not here concerned. It is sold in competition with the product of the patent under the trade-name of "Kendymag" and is offered to the metallurgical art for the same uses, under representations and warranties that it is the equal of Austrian magnesite.

So different are the processes of the two products that they bear no resemblance to each other. As the issue of infringement arises on a product patent, the processes are of course not material, except as they show characteristics of the two products that are either identical or different and that bear accordingly on the issue of infringement.

Kendymag like magdolite is made from dolomite. The rock used is not the run of the quarry but is selected with a regard to its chemical composition. It is then ground to an impalpable powder. During the pulverization process there is added a definite and substantial amount of iron oxide usually in the form of rolling mill scale. The pulverized mass is then fed into an inclined rotary kiln, such as is used in the cement art, and is subjected to a temperature equal to that of an open hearth furnace. The pulverized materials travel down the kiln through progressively increasing temperatures and become aggregated by fusion and chemical reaction into nodules of increasing size until they are discharged. The nodules are then ground to commercial size and the process ends.

For proof of infringement, the plaintiff relies on the identity of the characteristics of the two products. It claims broadly, that in both magdolite and Kendymag the same ingredients, in whatever condition

they are, make up a material that has the same character of an artificial substitute for Austrian magnesite. This contention, though true, obviously cannot alone sustain the charge of infringement, for it does not follow that invention of the first substitute for Austrian magnesite confers upon the inventor a monopoly over all substitutes subsequently invented, without regard to considerations of their distinguishing characteristics of composition and performance.

The plaintiff goes further, however, and claims identity of characteristics specifically, in that both products are used for the same purposes and accomplish the same results; each is made by burning the same kind of rock, whereby each is condensed, made uniformly free from volatiles and uniformly non-hydroscopic.

Referring generally to the plaintiff's claims of identity, it is true that the two products are made from the same rock and are used for the same purposes, but we are persuaded that they do not accomplish just the same results. Kendymag accomplishes more results. While each is "uniformly free" from volatiles when made, that is, while all parts of the same material are uniformly free from volatiles, each material as compared with the other does not remain equally free from volatiles. Kendymag maintains a greater freedom from volatiles for a longer time. Each is not uniformly condensed when in the form in which it is intended to be used. Kendymag is not condensed at all; it is enlarged. While each is uniformly non-hydroscopic, in the sense of uniformity in its own parts, the two products are not equally non-hydroscopic. In differences arising from the lack of equality in essential characteristics, we discern lack of identity.

In considering the defendant's contention that its product differs in structure and physical characteristics from that of the plaintiff, we find differences that are obvious. Magdolite retains substantially the solid crystalline structure of its initial dolomitic rock; but Kendymag loses the crystallization of the initial dolomite in the process of burning and is transformed into a material that is amorphous and porous. Its substance is composed not of the original rock crystallization, but of clinkers built into nodulose masses, the particles of which are aggregated by chemical reactions, in which, not only each nodule but every grain or particle of each nodule is made resistent to moisture, not temporarily as in magdolite, but almost permanently so. This difference goes directly to the qualities of the products as articles of commerce to be transported and stored and to the manner of their performance as furnace linings.

Incident to its crystalline structure, a characteristic of magdolite claimed by the patent is that it—

"is much heavier, volume for volume, than any manufactured dolomite heretofore produced, which has rendered the product available for purposes for which it has heretofore been thought impossible to use dolomite."

This characteristic is obtained by condensing the rock when volatiles are expelled. But the defendant's product, instead of being condensed in the process, is enlarged into a porous structure, with the result that, instead of its weight being increased, it is decreased, and, volume for volume, it is about 28 per cent. lighter than the patented product. It

was shown, however, that when both products are finely ground they are of the same specific gravity. But the metallurigical art does not use the products in a ground state. Grinding or pulverization is the very thing the art desires to avoid. On an issue of infringement, we are concerned only with identity of characteristics of two products in the form in which they are intended for use.

We incline also to the contention of the defendant that there is a difference in the chemical composition of the two products.

It is not clear just what chemical reactions take place in the processes of burning. It is known that certain of the constituent chemicals—silica, alumina, iron—are fluxes, and, in their fusion, cause chemical reactions which transform the rock in some unexplained way into moisture resistent and refractory products. In the magdolite process, the patentee first relied solely on the natural fluxing contents of the rock for chemical reactions, seeking, however, to keep the silica content at a low level of from 4 to 6 per cent. Acting on an opposite theory, the defendant in producing Kendymag seeks a high silica content running from 12 to 14 per cent. and to the natural iron content of less than 1 per cent. adds about 4½ per cent. of iron, whereby it is claimed that ferrates of lime and magnesia are formed which cover the myriads of clinkers and give to its product the characteristic of persistent resistance to the action of moisture. This characteristic admittedly it contains, and by it there is eliminated almost permanently the highly objectionable feature of slacking, which occurs promptly in single burned dolomite, and which occurs after a time in the double burned dolomite of the patent.

Although the chemistry of this subject justified the elaborate discussion in the evidence and briefs, its repetition in this opinion is not necessary to the decision. We are inclined to the opinion that the iron added to the defendant's product, and added after the invention to a portion of the plaintiff's product—the main controversial point in the chemistry of the case—performs an important chemical function in aiding the formation of nodules in the defendant's product and in facilitating in both the chemical reaction that takes place between lime and silica. Iron is a flux, and it is a flux which very certainly tends to regulate and equalize the other fluxes. We are of opinion that the chemical composition of the two products is not identical.

Considering the question of identity a step further, it is to be observed that the defendant's process for making its product was taken evidently from the cement art. Kendymag is not dolomite, unless it can be said that Portland cement is limestone, or is blast-furnace slag. Here as there, one thing is the product of the other. They are not the same thing. The material out of which Kendymag is made is dolomite, but in the process of making it dolomite with its rocklike and crystalline characteristic is destroyed and a new product is obtained having no resemblance to the original. Though radically transformed in its making, magdolite still is dolomite; it is described as such throughout the specifications and the claims of the patent, where it is referred to as "manufactured dolomite," "burned dolomite," "double burned dolomite." If Kendymag is not dolomite, it cannot infringe the patented

product, which is dolomite. If, however, it should be that the defendant's material because initially dolomite remains dolomite in its ultimate form, and, in consequence, both materials are dolomite, then, in our opinion, the distinguishing characteristics of the two dolomitic materials in their structure, physical properties and chemical composition are such as preclude infringement.

The decree below, when modified in accordance with this opinion, is affirmed.