## BITUMINOUS PRODUCTS CO. et al. v. HEADLEY GOOD ROADS CO.

(District Court, D. Delaware. October 16, 1924.)

No. 526.

**1. Patents ⬩⇒328—Reissue 15,401, for improved method of making roads, held invalid for want of patentable novelty.**

The Van Westrum reissue, No. 15,401 (original No. 956,009), for improved method of making roads by means of asphaltic cement laid cold, claims 1, 2, and 3, *held* invalid for want of patentable novelty, in view of the prior art.

**2. Patents ⬩⇒19—Mere variation in proportions of elements of a composition is not invention.**

A variation in the proportions of the elements of a composition does not constitute patentable novelty or invention, unless from the new proportions a new material or substance, or an old material or substance with new characteristics, or at least substantially enhanced qualities of utility, has been created.

**3. Patents ⬩⇒19 — New product must differ from old, otherwise than in degree.**

To be patentable, a new product, resulting from changing the proportions in an old composition, must differ from the old, otherwise than in degree.

**4. Patents ⬩⇒36—Acquiescence as evidence of validity.**

While long, general, and unexplained acquiescence in a patent may be persuasive evidence of its validity, such acquiescence is of little or no weight, if there are other patents within whose scope an infringement of the one in question would come.

In Equity. Suit by the Bituminous Products Company and the Barber Asphalt Company against the Headley Good Roads Company. Decree for defendant.

Henry N. Paul (of Fraley & Paul), of Philadelphia, Pa., and William G. Mahaffy, of Wilmington, Del., for plaintiffs.

Augustus B. Stoughton, of Philadelphia, Pa., and Charles F. Curley, of Wilmington, Del., for defendant.

MORRIS, District Judge. The bill of complaint of Bituminous Products Company, owner, and the Barber Asphalt Company, exclusive licensee, of reissued letters patent No. 15,401, granted July 4, 1922, to L. S. Van Westrum, for improvements in methods of making roads, charges the defendant, Headley Good Roads Company, with infringing the first three claims of that patent.

[1] The defenses are invalidity and non-infringement. The specification states:

"My invention relates to improvements in methods of making roads, streets, public squares, roadbeds of railways, and other like surfaces by means of an asphaltic cement laid cold. Bituminous roads, streets, etc., like sheet asphalt, tar macadam, bitulithic asphalt macadam, have hitherto usually been built in the following manner: The sand, stone, etc., have to be heated, and also the bitumen, like asphalt, tar, etc., and these materials have to be mixed hot and spread hot over a given foundation. * * *

"My invention does away with heating in any form when the pavement is to be laid. The broken stone, sand, gravel, or earth is used in its natural condition. * * * For this purpose I liquefy hard bitumen, like natural asphalt, artificial asphalt, or the like, by heating the same and mixing it with any suitable flux, like residuum of mineral oils, or residuum of cotton seed or similar oils. In case I use a softer bitumen, like Texas, California, or Kansas asphalt, which contains enough natural flux, I use these asphaltums pure, or with a smaller percentage of flux. I make these mixtures emulsifiable in water, and the products thus obtained are mixed with cold stone, sand, or earth, by hand or machinery, and spread upon the roadway on a given foundation and then compacted. * * * After a few hours the action of the air oxidizes the emulsified asphaltic cement, and the whole mixture of stone, etc., and emulsified asphaltic cement makes a compact mass, which is waterproof and hard enough to withstand any kind of traffic, and yet elastic.

"By 'hard bitumen' I mean asphaltums, tar, etc., which are not fluid when cold. * * * I do not limit my invention to any special process of emulsifying the bitumen, but I claim that it is novel to use as the base of my asphaltic cement hard bitumen, which is not fluid when cold, in excess over fluxes and chemicals."

Claims 1 and 2 are substantially alike. Claims 1 and 3 read thus:

"1. The method of building roads which consists in mixing with the materials constituting the mineral aggregate in their natural condition an asphaltic cement whose base is hard bitumen in excess over fluxes and chemicals, and emulsified with an agent whose basis is water, and in spreading and compacting the mixture on a suitable foundation."

"3. The method of building roads, which consists in employing an oxidizable bituminous emulsion, comprising a bituminous cement emulsified with an agent whose basis is water, mixing this emulsion with a cold mineral aggregate, and spreading and com-

pacting the mixture upon a suitable foundation, whereby the emulsion through action of the air, soon oxidizes and becomes insoluble in water, with production of a waterproof wearing surface."

In support of its defense of invalidity the defendant asserts that the patent is lacking in both novelty and invention; that it is not in such full, clear, and exact terms as to enable any person skilled in the art to which it appertains to practice or use it; that the reissue revives claims abandoned during the pendency of the application for the original patent No. 956,009, granted April 26, 1910; that the reissue introduces new matter; and that claim 3 thereof is broader than the original patent.

Bituminous roads antedated the application for the original of the patent in suit. As said by the patentee in his specification, such roads had usually been built by heating and mixing the sand or stone and the bitumen hot, and spreading such mixed materials hot over a prepared foundation. In such hot construction the bituminous content was not pure bitumen, but was a bitumen containing a flux. It was a common practice in such construction to use a bitumen in which the hard asphalt was in excess of the flux, though if a particularly hard asphalt or a heavy flux was used the flux could be in excess of the asphalt. The asphalt so used was both "natural asphalt" and "artificial asphalt." The so-called "natural asphalt" was the lake asphalt, such as Trinidad and Bermudas. The practice of fluxing (not emulsifying) such asphalts for paving purposes had existed since their introduction in this country, some time prior to the year 1880. The so-called "artificial asphalt" was the residuum obtained by driving off by distillation oils from petroleums having an asphaltic base, such as the Texas, California, or Kansas petroleums. The distillation could be continued until the oils were almost entirely driven off, and the residuum too hard to be used for paving purposes without fluxing, or it could be discontinued when the residuum arrived at a consistency or degree of hardness suitable for the purpose desired.

In the reissued patent in suit Van Westrum describes and claims a method of making roads by means of *asphaltic cement laid cold.* More particularly his method consists in mixing with the materials, such as stone, sand, gravel, or earth, constituting the mineral aggregate, in their natural condition—that is, unheated—an asphaltic cement whose base is *hard bitumen in excess over fluxes and chemicals,* emulsified with an agent whose basis is water, and in spreading and compacting the mixture on a suitable foundation. Assuming that the reissued patent has the same effect and operation as if it had been originally filed in its present form, is it valid?

The application for the original patent No. 956,009, was filed April 13, 1909. At that time, as has been pointed out, it was not novel in the hot construction of roads to mix with the materials constituting the mineral aggregate an asphaltic cement having a base of hard bitumen in excess over fluxes and chemicals and in spreading and compacting the mixture on a suitable foundation. Nor was the cold construction of roads then novel. Such construction probably had its origin soon after the advent of the automobile, in the use of emulsions for the laying of dust, but the use of cold emulsions as a permanent binding agent for the stones, sand, gravel, and dust-forming roadbeds followed fast upon their dust-laying use. Likewise the tendency to use oils and emulsions having a greater and greater asphaltic content soon developed. The state and development of the art is illustrated by many patents.

United States patent No. 752,487, of Van Westrum, applied for December 10, 1903, and granted February 16, 1904, is for a method of sprinkling streets. The specification states (page 1, lines 65 to 69):

"For the purpose of my invention in using a soluble sprinkling liquid I employ oily substances, such as petroleum, petroleum residue, or other suitable mineral or tar oils rendered soluble in water by any known process. * * *"

Lines 16 to 21, page 2, read thus:

"Finally, my improved sprinkling medium diffuses much easier than petroleum in the road surfaces covered with dust particles and binds permanently the stones, sand, dust, and earthy material or the like forming the roadbed."

It is to be observed that the oily substances employed are not restricted to crude oils or oils of any particular character. The latitude of the patent is such as to permit the use of petroleum residue of any character and of any degree of hardness or consistency. The commissioners of Lincoln Park, Chicago, who were sprinkling the roads in the park with an emulsion of residuum of California asphaltic oil, and obtaining thereby a cementing value as well

as a dust-laying value, and who were spreading screenings upon the sprinkled surface, and thereby constructing or building up the streets, were sued under this patent. Westrumite Co. v. Commissioners of Lincoln Park (C. C.) 164 Fed. 989; Id., 174 Fed. 144, 98 C. C. A. 178.

United States letters patent No. 752,486, granted to Van Westrum February 16, 1904, upon an application filed October 28, 1903, was not for a method of sprinkling streets, but was for a method of making roads or like surfaces. Line 85 et seq. of the specification provides:

"In carrying my invention into effect, I employ as the binding agent a liquid formed by the admixture of water and an oily substance dissolved or rendered soluble in water, the solution being made preferably with 75 to 97 per cent. of water to 25 to 3 per cent. of the oily substances. I mix the various materials to be used with my solution, applying said solution, consisting of water and oily substances rendered soluble in water, to the material during the formation of the road, either by admixture therewith or by sprinkling thereon during the period of constructing the road. I do not limit application of my invention in the matter of employing a fixing agent or permanent binding fluid to any particular method of dissolving the oil in water or rendering the same soluble therein, and I employ any process for making the solution that is to be used for mixing the materials or for applying thereto during the process of road or the like surface making."

Claim 1 reads thus:

"A method of making roads and like surfaces, consisting in broken stones, sand, dust, earthy materials, and the like, for forming the street body and the like, mixing the same with a solution consisting of water and oily substances rendered soluble in water, forming a gummy and adhesive mixture by which the said materials are bound together, substantially as described and for the purpose specified."

Under this patent the application of the emulsion to the mineral aggregate is made either by sprinkling or by mixing.

British patent to Butterfield, No. 1,776, applied for January 23, 1904, and granted January 19, 1905, relates to the making of macadamized roads and the like surfaces, and also to the emulsions to be employed therein; the object being to obtain a firm compact and dustless road with an asphalt surface, by applying to the road an emulsi-

fied solution of asphalt and Texas oil or the like, and ammonia with or without sodium silicate. The proportions given, omitting the optional sodium silicate solution, produce an emulsion containing asphalt or pitch, 10 to 20 per centum or more, Texas oil from which some of the more volatile compounds have been driven off, 60 per cent. or less, chemicals, 15 per cent., and water, 15 to 25 per cent. The asphalt solution was made by dissolving the asphalt in crude petroleum or benzine or petroleum spirit in an autoclave under a pressure of 40 or 50 pounds to the square inch. It thus appears that the asphalt referred to was a hard asphalt, probably Trinidad.

British patent No. 11,191, to Brashler-Kurtz, granted February 1, 1906, upon an application filed May 29, 1905, relates to an improved method of treating asphalt, whereby it may be converted into a mass of pasty consistency, which, diluted with water or in an undiluted state, may be used, "where asphalt has hitherto been employed in a dissolved, powdered, or molten state," "and further for making roadways or rendering them practically free from dust." The specification further states that the method of the patent is "suitable for emulsifying such substances as do not melt below 100° Centigrade and are insoluble in alkalies," thereby indicating its applicability to hard asphalt. The amount of flux to be added is not stated. As said by the defendant: "This patent covers an asphalt cement in which hard asphalt may predominate and the emulsification is carried out by means of a soapy agent and a colloidal substance (soap being itself a colloid)."

In view of the disclosures of these patents it is obvious, I think, that, if invention is revealed by the first two claims of the patent in suit, it is only because the composition of the asphaltic cement is new. In fact, this was conceded in the proceedings to obtain the reissue. But, as has been seen, the *ingredients* of that cement are not new, either in a patentable or in a commercial sense. Emulsified oils, emulsified asphaltic oils, emulsified residuums of asphaltic oils, and emulsified fluxed asphalt are all found in the prior road construction art. Hence, if invention exists, it resides in the *proportions* of the ingredients of the asphaltic cement. But even these proportions are apparently not beyond the scope of some of the prior patents. Moreover, it is admitted by plaintiff's expert that the amount of asphalt in Van Westrum's ce-

ment is the same amount of asphalt that was ordinarily contained in the asphaltic cement used in the prior hot construction of bituminous roads.

[2, 3] But let it be assumed that, prior to the patent in suit, the use of hard asphalt in excess over fluxes and chemicals had not been disclosed, used, or known. It is, of course, not contended by the plaintiff that a mere variation in the proportions of the elements of a composition constitutes novelty or invention, within the meaning of the patent law. To avail a patentee, it must appear that from the new proportions a new material or substance, or an old material or substance with new characteristics, "or at least substantially enhanced qualities of utility," has been created. Bethleham Steel Co. v. Churchward I. Steel Co. (C. C. A.) 268 F. 361. The new product must differ from the old, otherwise than in degree. To support a patent, the new characteristics of the composition must be other than, or not confined to, a mere augmentation or diminution of the known characteristics of the several ingredients which is in correlation with the increased or diminished amount of the respective ingredients entering into the composition. Brady Brass Co. v. Ajax Metal Co. (C. C. A. 3) 160 F. 84, 87 C. C. A. 240; J. E. Baker Co. v. Kennedy Refractories Co. (C. C. A. 3) 253 F. 739, 165 C. C. A. 333.

The asphaltic cement of the patent in suit fails, I think, to meet the required test. Mr. Smith, defendant's expert, testified (Q. 103) "that variations in the relative proportions of the hard asphalt and flux do not change the character of the bituminous base, except so far as its consistency is concerned. Therefore, in that respect, the difference, so far as the bituminous base is concerned, is one of degree only, and not of kind, there being no sharp distinction of kind whatever expressed in this range." This statement is corroborated by other witnesses.

The plaintiff urges, however, that between the prior art and that disclosed by the patent in suit there was a wide gap, in that the earlier patents pertained to oil treatment of roads, and not to the asphaltic treatment or construction, and that the bridging of this gap by Van Westrum was accomplished only by the use of the inventive faculties. But as some oils have an asphaltic base, and others have not, and as the two appear to have been used indiscriminately in the prior treatment of roads,

and as the relation of the quantity of asphalt and that of oil in an asphaltic oil residuum, called for by some of the earlier patents, depends upon the extent of the distillation or the concentration, it is difficult, if not impossible, as is illustrated by the Lincoln Park treatment or construction, to say that there was any well understood or defined gap between the asphaltic treatment or construction and the oil treatment, or 'that the one was not the obvious outgrowth and development of the other. But if, indeed, a gap did exist between the use of oil emulsions and asphaltic emulsions, the patent to Butterfield stands as a refutation of any contention that it was Van Westrum who bridged that gap.

The plaintiff further contends and establishes that the method of the patent has been and is being widely used in the repair of roads. But, while utility is essential to patentability, yet patentability is not an inevitable consequence of utility. This is not only well illustrated by the case of Brady Brass Co. v. Ajax Metal Co., supra, but the language and reasoning of that case are, I think, peculiarly apt and appropriate to the case at bar. It was there said:

"The mere difference in proportions of the constituents of an alloy, however useful the result may be, does not entitle the originator to a monopoly of a patent, in the absence of other circumstances than those here disclosed."

It is likewise true, as asserted by the plaintiff, that on the 8th day of April, 1919, the defendant became a licensor under patents No. 752,486 and No. 956,009 and that it continued as such licensor under the earlier patent until its expiration and under the later patent until its surrender and reissue on July 4, 1922, at which time the defendant in the exercise of its rights terminated the license. The relation of licensor and licensee having terminated, the defendant is not now estopped from denying the validity of the patent. Any inferences against defendant's present position that might arise by reason of its former license are minimized, if not nullified, by the fact that the license agreement included patent No. 752,486, as well as No. 956,009, and contained no provision for its termination at the option of the licensee after the expiration of the earlier patent.

[4] It appears from the evidence that the validity of patent No. 956,009 has been challenged but once. The suit then insti-

tuted thereon was adjusted without decree. The full details and circumstances of the adjustment are not in evidence. While long, general, and unexplained acquiescence in a patent may be persuasive evidence of its validity, yet apparent acquiescence, which may have been due solely to the existence of other patents within whose scope a person desiring to practice the art of the patent in question would have fallen, even had the patent in question not existed or been held invalid, has little, if any, tendency to establish validity. What would have been the history of patent No. 956,-009, had it not been flanked by Van Westrum's other patents, No. 752,486 and No. 752,487, cannot be known. The fact that the reissue was applied for within a few weeks after the expiration of patents No. 752,486 and No. 752,487 may not be wholly without significance.

For the reasons stated, and without considering the method employed by Van Westrum in constructing two streets in Whiting, Ind., in 1906, or the method employed by defendant in Weyland, Mass., in 1907, or the asserted vagueness of the patent in suit when applied to artificial asphalt (the kind used by the defendant), or the alleged abandonment to the public by Van Westrum of his only element of novelty by the abandonment of claim 1 in the original application, I am of the opinion that claims 1 and 2 are invalid for want of patentable novelty.

Claim 3 remains. The defendant contends that it is too broad, in that it calls for the employment of a bituminous emulsion, which is a more generic term than the term "asphaltic emulsion," used in the original patent. The plaintiff meets this contention, and I think successfully, by pointing out that the claim calls for an "oxidizable bituminous emulsion," and by establishing that the only oxidizable bituminous emulsion is an asphaltic emulsion. Hence the claim must be read and interpreted as if the word "asphaltic" were substituted for the words "oxidizable bituminous." So interpreted, it covers broadly and generally the employment of asphaltic cement in the cold construction of roads, regardless of the ratio in its composition of asphalt to fluxes and chemicals, and is consequently invalid in view of the prior art, unless the concluding words of the claim, "whereby the emulsion through action of the air soon oxidizes and becomes insoluble in water, with production of a waterproof wearing surface," are not only words which limit the scope of the claim, but are also terms proper in the light of the original patent to be employed for that purpose.

It seems to me that, in a claim properly defining a real invention, the function or effect of that invention may be set out without impairing the validity of the claim. I should think that in a valid claim the scope of that claim might possibly be narrowed by words of functional limitation or by words defining the effect of the invention. But if, unsupported by its words, specifying the function or effect of the supposed invention, a claim is invalid, I think that it cannot be validated, at least as a general rule, by such words of function or effect, for it would thereby be made a claim for a mere function or effect, and consequently void for that reason. In other words, a claim for an unpatentable means or method of producing an effect is not valid. I think claim 3 has that vice.

But let claim 3 be tested upon another theory. Assume that, instead of substituting in the claim the word "asphaltic" for the words "oxidizable bituminous," it should be substituted for the word "bituminous" only, and the claim should be read "oxidizable asphaltic emulsion." Let it be further assumed that an oxidizable asphaltic emulsion is an emulsified asphaltic cement, whose base is hard asphalt in excess over fluxes and chemicals. Obviously no more favorable construction than this could be placed upon this claim. Under such construction claim 3 would differ from claims 1 and 2 only by having expressed in it an alleged novel and useful effect of the specified method of the cold road construction. The embodiment of such a statement would, of course, neither create validity if it were lacking nor destroy it if it were otherwise present. It would only emphasize an alleged useful and novel result obtained by the employment of the methods specified in the claim. There would thus be presented the question whether the alleged result was novel in a patentable sense, and, if so, whether the statements in the specification of the reissue, upon which the result described in the third claim is predicated, was supported by the original patent, or was new matter.

It has been hereinbefore shown that the only difference between an asphaltic cement, whose base is hard bitumen in excess over fluxes and chemicals, and an emulsified asphaltic cement, whose base is hard bitu-

men not in excess over fluxes and chemicals, is one of degree only. It has likewise been hereinbefore shown that there is no critical point in the proportionment of fluxes and chemicals, upon the arrival at which the emulsion acquires properties different in kind from those it theretofore possessed. The evidence adequately discloses that in these respects that which is true as to the properties of hardness and consistency is also true as to those other attributes that are native to asphalt and that are inseparable from its increasing hardness and consistency.

Consequently it is clear that, even upon the theory under consideration, claim 3 would be invalid, and for the like reasons as claims 1 and 2. This becomes quite obvious, I think, when it is remembered that asphaltic emulsions were not new at the time of Van Westrum's alleged invention, and that in his application for the reissued patent it was conceded that the method of building roads which consists in mixing an asphaltic cement emulsified with an agent whose basis is water with a cold mineral aggregate, and spreading and compacting the mixture on a suitable foundation, was not novel at the time of the filing of the application for the original patent, or the making of the alleged invention therein described.

The defendant urges that the parts of the specification of the reissued patent in suit upon which the supposed novelty and invention of the third claim is based constitute new matter, involve a departure from the alleged invention of the original patent, and that the third claim is invalid for this further reason. Though I am somewhat inclined to think this contention sound, yet, being convinced of the invalidity of the third claim, for the reasons already stated, I deem it unnecessary to determine whether the finding of invalidity may be further supported.

The bill of complaint must be dismissed.