## HELFRICH v. SOLO et al.
### No. 4626.

Circuit Court of Appeals, Seventh Circuit.
June 10, 1932.

This is a bill in equity and alleges infringement of United States patent No. 1,-655,369, issued January 3, 1928. In addition to seeking an injunction and an accounting for the infringement, it asks for an award of treble damages on account of the wanton and aggravated character of the infringement. Appellees filed an answer and counterclaim in which they alleged a partnership interest by appellee Louis A. Solo in appellant's patent, and they further alleged nonpatentability and noninfringement. The cause was heard by a master, who found that claims 1, 2, and 9 were valid and infringed; that the remaining claims were invalid; that the acts of appellees were unethical, but were not committed concurrently with the infringement; and that appellees' counterclaim was not sustained by the evidence.

Upon exceptions to the master's report by appellant and appellees, the District Court reversed the master as to the validity of claims 1, 2, and 9, but in all other respects sustained the master's report, and dismissed the bill and counterclaim. Appellant appeals from the court's ruling as to claims 1, 2, 5, 8, and 9, which claims are set forth in the margin.[1]

Ira J. Wilson and Roy R. Barr, both of Chicago, Ill., for appellant.

W. Bartlett Jones, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The application for the patent in controversy was filed December 4, 1926. It relates to cosmetics and claims particularly a compact, which is a term applied to cosmetic rouge and powder marketed in cake form and adapted to be carried by the user in a container, from which the cosmetic compo-

---

[1] "1. A compact containing the following ingredients in the following original proportions: a color vehicle, a mineral oil and a binder, in the proportions of 18# of color vehicle to 100 cc. of mineral oil to 1200 cc. of binder, said binder containing originally 20 grams of powdered gum arabic to one gallon of water; said color vehicle comprising domestic talc free from silica, heavy imported chalk, and yellow ochre in the proportions of 99# talc to 9# chalk and 15 oz. yellow ochre.

"2. A compact containing the following ingredients in the following original proportions: a color vehicle, a mineral oil and a binder, in the proportions of 18# of color vehicle to 100 cc. of mineral oil, and 1200 cc. of binder, said binder containing originally 20 grams of powdered gum arabic to one gallon of water; said color vehicle comprising domestic talc free from silica, and heavy imported chalk, in the proportions of 99# talc to 9# chalk, and a pigment."

"5. A wet-formed compact comprising a color vehicle, a binder, and a fatty-natured emollient, the binder amounting to substantially 0.1% of the total solids, and the emollient amounting to substantially 1% of the total solids."

"8. A wet-formed compact containing a color vehicle, and a mineral oil, in the proportion of substantially 99% vehicle and 1% oil."

"9. A wet-formed compact comprising a binder, a body having substantially the composition resulting from the admixture of ninety-nine pounds of talc with from nine to sixteen pounds of chalk, and substantially one per cent of a fatty-natured emollient."

sition is rubbed off the compact with a puff and applied to the face as desired.

All the ingredients used are old in the art of making face powder, and, if appellant's product be patentable, it must be by reason of the fact, if it be a fact, that appellant, by a different combination of old elements, or by using them in different proportions, has produced a new and useful result which entitles his product to protection.

From the record in this case we understand that the efficacy of any face powder, as such, is the same whether it be in the form of a loose powder or in the form of a compact, and the difference in form is largely a matter of convenience and preference.

There are two methods of making compacts: One is called the "dry form" method and the other the "wet form" method, and this difference is one of method rather than of substance.

"Dry form" compacts are formed by pressure of machinery and are fragile and easily broken in handling and shipping. Those made by the wet process are made practically without pressure and are not so hard and are less fragile than those made by the dry process. The latter are advertised as handmade in order to induce the public to believe that they are better because they are handmade, when in truth they are not handmade, and, so far as the beneficial effect on the face is concerned, they are not different from the dry form compact, provided the same face powder ingredients are used in each. No doubt there may be certain ingredients in the wet form compact, or different proportions of the same ingredients, which are not necessary and perhaps are not found in the dry-formed compacts. Those ingredients, or proportions of ingredients, however, neither add to nor detract from the efficiency of the finished product as a face powder, but, as we understand the evidence, they are used in the "wet form" compact because their use in that process renders the compact softer and less liable to break.

The principal ingredient of all face powder, so far as this record shows, is talc, and in its domestic state it always contains an impurity of white clay, called kaolin, in quite a variable degree. Such variation is present in talc taken from the same mine. The average kaolin content of ordinary commercial talc is perhaps five per cent., but it is very inconstant and sometimes reaches ten per cent. It has binding qualities, and, when used in large quantities, produces a hard and brittle compact. By replacing excess kaolin with chalk, and by using mineral oil, patentee claims to have obtained an entirely new and better result by eliminating the hardness and brittleness of the compact.

As an illustrative procedure in his specification he uses ninety-nine pounds of domestic talc, free from silica and mica, nine pounds of heavy imported chalk, and fifteen ounces of yellow ochre. These are mixed in a powder mill and sifted to remove grit, and then ground into a stiff paste in a mixer. To this is added one hundred cubic centimeters of a fatty-natured emollient, a proper amount of perfume oil to suit the taste of the user, and twelve hundred cubic centimeters of binder to each eighteen pounds of dry material. One emollient used is purified water-white mineral oil having a specific gravity of 0.868. In addition to the foregoing, sufficient water is included to make a heavy paste of the whole. The binder referred to is an intimate mixture of water and gum arabic in the ratio of twenty grams of gum arabic to one gallon of water. The pigment-carrying medium in the finished compact is plastic to such an extent that the jolting or possible flexure of the supporting plate encountered in the ordinary use of the compact will not chip or break it, and it is sufficiently friable to be capable of use with substantially the same effect as loose powder. It is not essential that all the different parts of the invention be employed in conjunction, as certain of them may be advantageously used in various combinations and subcombinations.

In a sworn answer to interrogatory No. 5, propounded to him by appellees, appellant stated that the following formula is a correct conversion to a common basis of the pounds, grams, cubic centimeters, gallons, parts and percentages stated in the specification of the single formula disclosed:

|  | Parts Wet | Parts Dry |
|---|---|---|
| Domestic Talc | 7,430 | 7,430 |
| Imported Chalk | 680 | 680 |
| Yellow Ochre | 73.5 | 73.5 |
| Mineral Oil | 85 | 85 |
| Gum Arabic | 6.3 | 6.3 |
| Water | 1,194 | |
| Total | 9,468.8 | 8,274.8 |

It is not stated in the specification of the formula whether the product is a wet-formed or dry-formed compact, nor do claims 1 and 2 make any distinction in that respect, but claims 5, 8, and 9 specifically refer to wet-formed compacts.

A chemical analysis of appellant's compact and what is claimed to be appellees' compact reveals the following information as to the presence of talc, kaolin, chalk, mineral oil, gum, and other silicates found in each:

| | Appellant | Appellees |
|---|---|---|
| Talc | 68.7% | 66.7% |
| Kaolin | 4.8 | 10. |
| Chalk | 9.4 | 4.4 |
| Other silicates chiefly Calcium | 12.9 | 13. |
| Gum equivalent to Gum Arabic | .05 | .15 to .20 |
| Ether extract has characteristics of a mineral oil. | | |

As a matter of fact, appellees use no gum arabic, but instead, and for the same purpose, they use gum tragacanth, which appellant says is liable to produce a mold on the compact.

We think it pertinent to consider briefly appellant's testimony relative to the difference in methods of making both the wet form and the dry form product, for it gives one a better understanding of the meaning of the terms "wet form" and "dry form" as applied to compacts, and we think throws considerable light on the nature and character of his specification and claims, and the points wherein he claims appellees have infringed his patent.

Appellant makes and sells both wet and dry form compacts, and he says that he has never seen a dry form compact formula where it would be possible to produce a mixture or paste suitable for a wet form compact by merely adding water. He states that in making a dry form compact the dry material is ground into a wet mass such as is used in a wet form compact. "They simply add water to it as far as I know. This wet mass, instead of being pressed in that condition as it is in a wet form compact, is put in ovens and dried thoroughly. It is then re-ground into a powder form, slightly dampened with water to retain its shape and granulate it, and it is then pressed into a compact in its slightly dampened form. * * * There is quite a definite difference in the amount of pressure necessary in making a wet form compact and in making a dry form compact." He further states: "A wet form compact is a compact made up of dry material, that is, originally dry material, which is put into a grinder and ground into a wet, heavy, stiff paste, and is then moulded in that condition. It is moulded wet and is therefore known as 'wet form.'" These statements of appellant, in connection with that part of the specification which says that his finished product is capable of use with substantially the same effect as loose powder, convince us that his formula as given in the specification is capable of use in both the "wet form" and "dry form" compacts, and this conviction is somewhat confirmed by appellant's answer to interrogatory No. 5, hereinbefore referred to, and by the further fact that all ingredients used, or their equivalents, had been used in making "dry form" compacts or loose face powder long before appellant's formula is alleged to have been discovered. It will be observed in the specification that it is not essential that all the different parts of the alleged invention be employed in conjunction, as certain of them may be used in various combinations.

It is also to be borne in mind that there is not one word mentioned in the specification relative to the character of the compact, whether "wet form" or "dry form." It is quite true that sufficient water is included to make a heavy paste of the whole, but appellant testified that this is done in making either kind of compact.

No prior patents have been cited, but various publications and uses were pleaded and proved to the effect that every ingredient used by appellant has been known and used by those skilled in the art of making face powder and by the general public for many years, and the patent discloses nothing new as to the content of face powder as such.

Appellant insists, however, that none of these citations specifically involve "wet form" compacts. It is true that the term "wet formed" is not referred to in any publication cited, but that may also be said of appellant's specification and his first and second claims. We are convinced from the evidence, including the testimony of appellant, that many of the formulæ cited would respond more or less successfully to the wet process, depending entirely on the amount of kaolin present in the talc.

It is quite likely that none of the formulæ cited as prior art, if made by the wet process, would always, or perhaps ever, produce as good a wet form compact as that made by appellant, and this is due to the variable amount of kaolin used; but, for the same reason, it is also true that a following of appellant's specification will not always produce the same result, and his testimony reveals the fact that he does not follow the specification, but counteracts the exces-

528

sive kaolin with a variable amount of chalk, which fact is referred to in neither his specification nor his claims.

Each element, and its use, is very old. Talc is the base; kaolin has a binding effect, and in excessive amounts renders the compact hard and brittle; chalk counteracts the effect of excess kaolin and renders the product softer and less fragile; gum arabic is merely the binder; the purpose of oil is to cause the powder to adhere to the skin; and yellow ochre is the coloring matter.

It is quite obvious that chalk adds nothing beneficial to the content as a face powder, and we do not understand that appellant contends otherwise. If, however, we have misapprehended his contention in this respect, that fact would not strengthen his position, because chalk as an ingredient is very old in the art.

If appellant's patent is valid, it must be due to the fact that he uses chalk in conjunction with talc for the mere purpose of rendering the compact less friable and less apt to break in handling, and the further fact that he uses mineral oil as an emollient. His testimony and argument seem to narrow the contention to these two points.

■ It is clear from appellant's testimony that, in order to produce the results which he claims for his patent, the amount of chalk to be used must vary in proportion to the amount of kaolin present in the mass of talc used in each operation; but neither his specification nor his claims disclose what that proportion is. For that reason the District Court held that the patent was invalid as to each claim, and we think the ruling is correct. No doubt the use of domestic talc and chalk in the proportions of ninety-nine pounds of domestic talc to nine or sixteen pounds of chalk will produce appellant's product, if the kaolin present does not exceed a certain amount. The controlling ratio is not between talc and chalk, but between kaolin and chalk, and concerning that ratio the patent discloses no information.

■ In consideration for the issuance of a patent, the applicant is required to disclose information by which the product can be made for the use of the public after the expiration of the patent. It is true that the disclosures of a patent are directed to those skilled in the art; but no amount of skill or art in following patentee's specification would produce, more than infrequently, the results claimed by him. The fact, if it be a fact, that his testimony discloses the proper

proportions of kaolin to chalk, will avail him nothing, for his claims and his oral testimony cannot be permitted to broaden the disclosures of his specification.

Appellant in his argument states that the use of mineral oil in his compact accomplishes the same result as the use of all other oils used in all other compacts and loose form powders; that is to say, it causes the powder to adhere to the skin. He insists, however, that the primary function of mineral oil as he uses it is to serve as a mild binding element in conjunction with chalk and gum arabic. It is worthy of note that he makes no reference to that fact in his specification or his claims, and he submits evidence to the effect that mineral oil is preferable because other kinds have a tendency to oxidize and become rancid. In his argument he states that the sole use of oil in loose form face powder is to cause adherence to the skin, and we think a fair interpretation of the evidence in this cause is that it is used for that purpose in all compacts, and that it is not regarded as a binder in any appreciable degree, or as a necessary ingredient in the formation of a compact or for its binding effect upon that formation. In all the formulæ submitted where oil is used, including appellant's formula, the oil is always referred to as an emollient and never as a binder. The citation referred to as the "German publication," which was copyrighted and published in Bavaria in 1912 and 1924, and has been available to the public in this country since 1913, clearly specifies mineral oil as an ingredient for rouge, and we think it anticipates appellant's patent regardless of the fact that it contains no chalk, and the further fact that it may be regarded as a dry form compact. Title 35, U. S. C. § 32 (35 USCA § 32); Westinghouse Electric & Mfg. Co. v. Saranac Lake Electric Light Co. (C. C.) 108 F. 221.

■ Appellant further insists that, inasmuch as appellees have not pleaded uncertainty as to specification or claims, they cannot be permitted to recover on that theory. We think the decree of the District Court is not based on that theory. It is true that in the opinion of the trial court it is stated that the uncertainty in claim 1 arises from the use of the term "domestic talc," and it is found as a fact that the use of that term in the patent and as found in claim 1 is an uncertain term; but the finding further states that claims 1, 2, and 9 are invalid as not involving invention. It is quite obvious that the lack of invention is due to the uncertainty of the

amount of kaolin in domestic talc, and not to indefiniteness of the claims. Without the aid of appellant's testimony, the specification and claims involve elements old in the art, and no new result is produced by his disclosure. Appellant has failed to disclose in his specification or claims the novelty upon which he now relies, and this we think precludes his recovery on any of his claims. Permutit Co. v. Graver Corporation, 284 U. S. 52, 52 S. Ct. 53, 76 L. Ed. 163; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Brown v. Stilwell & Bierce Mfg. Co. (C. C. A.) 57 F. 731.

If we were permitted to consider appellant's testimony for the purpose of broadening his disclosures, that would merely reveal the fact that his product is produced only by a difference in proportions of old ingredients, and this it seems is not patentable in the absence of other circumstances than those here disclosed. Bituminous Products Co. v. Headley Good Roads Co. (D. C.) 2 F.(2d) 83; Carbide & Carbon Chemicals Corporation v. Texas Co. (C. C. A.) 31 F.(2d) 32; Brady Brass Co. v. Ajax Metal Co. (C. C. A.) 160 F. 84; Bethlehem Steel Co. v. Churchward International Steel Co. (C. C. A.) 268 F. 361.

We are convinced that the District Court ruled correctly in holding the patent invalid as to each claim, and in dismissing both the bill and the counterclaim for want of equity. It is therefore unnecessary to consider the questions raised relative to infringement.

The decree is affirmed.