## BETHLEHEM STEEL CO. v. CHURCHWARD INTERNATIONAL STEEL CO. (CARNEGIE STEEL CO., Intervener).

(Circuit Court of Appeals, Third Circuit.    September 28, 1920.    Rehearing Denied November 22, 1920.)

No. 2545.

1. Patents ⬥⟜328—868,327, claims 1 and 3, for alloys of steel, void for want of invention.

   The Churchward patents, No. 845,756, claim 1, and No. 868,327, claims 1 and 3, each for an alloy of steel, *held*, on the evidence, void for want of patentable invention.

2. Patents ⬥⟜42—Novelty in proportions of alloy must produce new result.

   Novelty, in the sense of the patent law, in the proportions of basic metals used in an alloy, involves not merely figuring out proportions differing from any known before, but new results from the new proportions, developing a new metal or an old metal with new characteristics of structure or performance.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Churchward International Steel Company against the Bethlehem Steel Company, with the Carnegie Steel Company, intervening. Decree for complainant, and defendant Bethlehem Steel Company appeals. Reversed.

For opinions below, see 260 Fed. 962; 262 Fed. 438.

Charles Neave, of New York City, Joseph C. Fraley, of Philadelphia, Pa., and Clarence D. Kerr, of New York City, for appellant.

Duell, Warfield & Duell, of New York City (F. P. Warfield, H. S. Duell, and L. A. Watson, all of New York City, of counsel), for appellees.

Before WOOLLEY, Circuit Judge, and ORR and MORRIS, District Judges.

WOOLLEY, Circuit Judge. Vanadium was discovered in 1830 in a specimen of iron obtained from ores at Taberg, Sweden, and was subsequently produced in quantities from the slags of the Taberg blast furnaces. Later the metal was found in Scotland and Mexico.

Investigation of the metal began with its discovery and broadened with its widening production. Its value as an alloying material was of course not recognized until alloy steels, first conceived perhaps in about 1858, became established in 1890 to 1900. Since then the use of vanadium as an alloying metal has grown apace with the development of its properties.

In the manufacture of steel from alloys in countless combinations and proportions it became known that small quantities of alloying metals and small differences in their proportions frequently make considerable difference in the properties of the resultant steel. It was discovered that vanadium lay between carbon and chromium in the properties it impresses upon steel and that small amounts ranging from .10 per cent. to .50 per cent. increase substantially the tenacity, elastic limit, tensile strength and the fatigue resistence of the metal,

and also its malleability and hardness after tempering. Hence its adaptability in alloy steels, where, as in armour plates, especially hard surfaces are required, and where, as in automobile and locomotive parts, shock and vibration are constant and metal fatigue inevitable.

As these properties were revealed, vanadium became very naturally the subject of wide discussion in metallurgical literature and its use increased in the metallurgical art as an alloying ingredient in alloy steel. Before vanadium thus came into use, the art contained a variety of alloy steels named and known by the essential ingredients composing them. Aside from carbon and manganese steels, whose controlling ingredients were present by nature, or, when desired, were increased by additions, the patent records and the literature of the art showed nickel steels, chrome steels, nickel-chrome and chrome-nickel steels, whose characteristics were those inherent in their dominant alloying materials. Later vanadium was added to these alloying ingredients. In consequence there came into the art vanadium-carbon steels, vanadium-nickel steels, chrome-vanadium steels, whose distinctive characteristics reflected the dominance of their alloying elements.

This was the state of the art, it is insisted, when James Churchward entered it with the inventions of two patents. These inventions, it is claimed, showed for the first time, in addition to the natural alloying elements of carbon and manganese, the three added elements of nickel, chromium and vanadium; thus establishing, as it is contended, the first vanadium-nickel-chrome alloy steel. The Letters Patent awarded Churchward for these alloy steels are No. 845,756, granted March 5, 1907, on an application filed November 1, 1906, and No. 868,327, granted October 15, 1907, on an application filed April 12, 1907. Churchward International Steel Company, the owner of the patents, charging their infringement by Bethlehem Steel Company, brought this action in the District Court. After hearing, the claims of the patents in issue were sustained and found infringed. 260 Fed. 962. Whereupon Bethlehem Steel Company took this appeal, bringing here for review several questions, only one of which we find necessary to consider.

We desire to make clear at the outset that in rendering a decision in this case we shall neither express nor intimate opinions on the metallurgy of vanadium, or of vanadium steel alloys, or on their place in the field of invention, present or prospective. We shall do no more than give such views as we find necessary to determine the issues of this case and then only as they arise from and are sustained by the evidence. Note is made of the unusual circumstance that this evidence, so far as it relates to the metallurgy of the subject, is not controverted. We shall therefore review the case as it was tried in the court below.

On the issue of validity the plaintiff offered in evidence copies of the Letters Patent in suit and rested. In other words, the plaintiff in opening relied solely on the presumption of validity of the patents arising from their grant.

Though differently described on their issue, both patents relate to alloy steels as distinguished from carbon steels or normal steels. Both claim an alloy containing, in different proportions, the same alloying metals of steel (with varying carbon content), nickel, chromium,

manganese and vanadium. In neither patent is it clear whether the invention disclosed is in the alloying metals or in their proportions or in both. So also in neither is it claimed that the resultant product contains or has in higher development the properties known to characterize the constituent alloying ingredients either separately or in combination, such, for instance, as we have shown with reference to vanadium.

[1] The first patent (No. 845,756) states that the

"invention relates to alloys of iron and steel, and particularly to the latter, where nickel is employed as one of the alloying metals; and the object of the invention is to produce a self hardening metal (one cooled in the air from red heat and sufficiently hard to be used as a cutting tool) which will be suitable for many uses and purposes."

The only new property—indeed the only property—claimed for the alloy of the patent is found in the following language:

"It is believed that the alloying elements named react on each other to produce chemical and molecular changes of such a nature that the tungsten, chromium and manganese are permitted to harden the steel, while the *vanadium removes or prevents brittleness and imparts toughness without softening the alloy.* * * * In cases where the product is to have extreme toughness and hardness the tungsten may be omitted"—as it is from the claim in suit.

The specification of the second patent (No. 868,327) differs little from that of the first. There it is stated that the invention

"relates to alloys of steel, and particularly where vanadium (as distinguished from nickel in the first) is employed as one of the alloying metals; and the object of this invention is to produce a metal * * * which will be suitable for many uses and purposes."

Suitable proportions of the several alloying metals are illustratively given "for producing an extremely tough metal with great resistence to shock." The same theory of chemical reaction and molecular change described in the specification of the first patent is repeated in the second, differing from the first only in the addition of nickel to the element of vanadium in effecting removal or prevention of brittleness without softening the alloy.

Thus we come to the claims of the patents, of which three are in suit; claim 1 of the first patent, and claims 1 and 3 of the second patent. Laying aside claim 1 of the second patent for the moment, and reciting the remaining claims in a manner to show by comparison their similarity and difference, it appears that each claim is for

"An alloy containing the following metals in about the proportions given," namely:

|  | Steel. | Carbon Content. |
|---|---|---|
| First Patent Claim 1 | 90 to 95 parts | Given Below |
| Second Patent Claim 3 | 91.50 to 98.30 parts | Given Below |

|  | Carbon. | Nickel. | Chromium. | Manganese. | Vanadium. |
|---|---|---|---|---|---|
| First Patent Claim 1 | .20 to .60 | 1 to 3.50 | .50 to 2. | .15 to .70 | .05 to .25 |
| Second Patent Claim 3 | .20 to 1.25 | 1 to 3.50 | .50 to 2.50 | .15 to 1. | .05 to 1.50 |

On comparison it is seen that the alloying metals are the same in both patents, the proportions of those in the second patent covering

the proportions of those in the first. To be more explicit, the proportion of each ingredient in each patent begins at the same minimum, and, in the second patent, the proportion of each ingredient comes up to that of the first patent and passes on to a higher maximum, producing, as the only difference we can discern, a range wider in the second than in the first, without any claimed difference in results, properties, or performance of the two alloys.

That the alloys of the two patents constitute inventions is evidenced prima facie by the patents and is implied in the presumption of the patents' validity arising from their grant. But this presumption is of course rebuttable and is open to attack on a showing that the claimed inventions for which the patents were granted were not inventions at all, because they lack new and advantageous properties over the prior art. In this manner the defendant attacked the plaintiff's prima facie case.

[2] Patentable novelty may reside either in the elements of alloys or in the proportions of the elements. If novelty of elements is claimed in the first patent, that patent falls on the plaintiff's failure to controvert the defendant's evidence abundantly showing that before Churchward vanadium was used with chromium, nickel, manganese and carbon in alloy steels. If novelty of elements is claimed in the second patent, that patent falls on the showing of the first patent. Novelty of the patented alloys, if any, must therefore be found in the proportions of the elements. On this issue the defendant showed that in endeavoring to determine experimentally the value of vanadium in nickel-chrome-manganese steel alloys it had used the elements of the patented alloys in substantially the proportions specified by the patents before Churchward's alleged inventions, which in this case are of the dates of the patent applications. This evidence however we do not accept as conclusive of anticipation, for it is possible that the defendant, in employing the same elements in the same proportions, may not, because of difference in heat treatment, have obtained the alloys of the patents. Pittsburgh Iron & Steel Co. v. Seaman-Sleeth Co., 248 Fed. 705, 708, 709, 160 C. C. A. 605. But novelty of proportions in the sense of the patent law involves something more than figuring out proportions differing from any that were known before. It involves new results from new proportions, developing a new metal, or, it may be, an old metal with new characteristics of structure or performance, embracing entirely new, or at least substantially enhanced, qualities of utility. Glue Co. v. Upton, 97 U. S. 3, 24 L. Ed. 985; Welling v. Crane (C. C.) 21 Fed. 707; Brady Brass Co. v. Ajax, 160 Fed. 84, 90, 87 C. C. A. 240; Pittsburgh Iron & Steel Co. v. Seaman-Sleeth Co., 248 Fed. 705, 160 C. C. A. 605; Miami Copper Co. v. Minerals Separation, Ltd., 244 Fed. 752, 157 C. C. A. 200. To prove that the alloys of the patents in the proportions specified lack patentable novelty the defendant produced evidence which, in the absence of contradiction, must be accepted as conclusive.

On the issue whether the alloys of the patents contain advantageous properties over alloys of the prior art made from the same elements in different proportions, or whether they contain properties different from those of the prior art, the defendant offered evidence to prove

that while vanadium has a beneficial effect in carbon steels, in nickel steels and particularly in chrome steels, it has no such effect in chrome-nickel steels; that instead of producing the only new and useful property in the resultant steel claimed for it in the two patents—the removal and prevention of brittleness—vanadium increases brittleness; that it (Bethlehem Steel Company), after using vanadium in nickel-chrome-manganese alloys within the range of the proportions of the patents, found that vanadium introduced a detrimental condition in the product, and, in consequence, abandoned its use; that Carnegie Steel Company (though under license of the patents and free to continue) found it troublesome to get out tonnage when adding vanadium to a nickel-chrome-manganese alloy and likewise abandoned its use; and that Midvale Steel Company, after experimenting with vanadium in similar alloys, was not sufficiently encouraged to begin its use.

The door was open to the plaintiff to meet this evidence in rebuttal. The plaintiff, however, controverted none of it. The defendant's evidence therefore stands with all its probative force undisturbed and must be accepted as the truth. Neither did the plaintiff avail itself in rebuttal to strengthen its case in chief—based on the presumption of validity from the patent grants—by producing evidence that the alloys of the patents were novel or that they contained new elements of utility, in that they were different from or better than prior nickel-chrome-manganese-vanadium alloys either in metallurgical or physical characteristics or in performance. It rested first, on the presumption of utility arising from the fact that the defendant had made alloys of the elements of the patents within the range of their proportions. This of course is valid evidence of utility so far as it goes; but alone it does not prove in the light of the record that the utility of the patented alloys was greater than or different from that of kindred alloys made before the patents. Vanadium was an alloying metal of the prior art, known to be useful in producing certain properties and free to be used by anyone desiring them. To constitute invention in the continued use of vanadium, it must appear that some new property had thereby been attained or some newly useful result had been achieved.

The plaintiff relied, second, on proof that Carnegie Steel Company had paid it the substantial sum of $275,000 in settlement of infringement litigation and for licenses under the patents in the manufacture of armour steel. While a transaction of this kind, involving the payment of a sum of this amount by a concern which had the metallurgical knowledge and expert patent assistance of Carnegie Steel Company, would doubtless cause anyone to pause in rendering an opposite opinion as to invention in the subject-matter; yet, unless we were to substitute the opinion of the experts of the Carnegie Steel Company for our judgment, without knowing what evidence was before them, but well knowing that the evidence before us was not before them, we must assume the responsibility and resolve the issues as the case has been made by the evidence. And this we do by finding that the evidence of this transaction, with all its implications, is outweighed by the evidence against invention.

The plaintiff relied, lastly, on proof of licenses under the patents granted United Alloys Steel Corporation, and on the claim that the alloys being produced under these licenses were supplanting other alloys in the art. While evidence of this character is always persuasive, and when aided by other evidence may become conclusive, it is not controlling in this instance. As the licenses were not introduced in evidence, and as no officer of the plaintiff or of the licensee corporation testified, the character of the licenses (and therefore their probative value) is not before us. As neither the licensee manufacturer nor any user of the licensed alloys testified, we are not informed of the properties or performance of the alloys or their place or doings in the practical art.

The remaining claim in issue is claim 1 of the second patent. It is for—

"An alloy composed of steel combined with small proportions of nickel, chromium, vanadium, and manganese."

This claim contains the infirmities of the more specific one with which we have dealt.

Being of opinion that the claims in suit are, under the evidence, invalid for want of patentable invention, we direct that the decree below be reversed and that the trial court enter an order dismissing the bill.