**DAVID BELAIS, Inc., v. GOLDSMITH BROS. SMELTING & REFINING CO.**

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

No. 247.

1. **Patents ⬚36.**

Commercial success is unsafe guide to invention, particularly unless prior efforts have been made to fill the space.

2. **Patents ⬚328.**

1,330,231, Belais patent, claim 3, for white gold alloy, *held* invalid.

3. **Patents ⬚26(2).**

New result may disclose invention, though it existed in none of successive steps by which it was obtained.

4. **Patents ⬚20—Rule refusing patentability to change of form covers alloys, though alloy accomplishing new result may attain invention.**

Rule refusing patentability to mere change of form covers alloys, though alloy never mixed before may effect so startlingly new a result as to arrive at even pioneer invention.

5. **Patents ⬚17.**

Ordinarily, attainment of comparative superiority or greater excellence is not patentable invention.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by David Belais, Inc., against the Goldsmith Bros. Smelt-

ing & Refining Company. Decree for defendant (6 F.[2d] 930), and plaintiff appeals. Affirmed.

Suit is upon claim 3 of patent 1,330,231, issued to David Belais February 10, 1920, upon an application filed October 5, 1918.

The claim in suit is as follows:

"As a composition of matter, a white gold alloy, composed of gold, nickel, and zinc, the proportion of the gold ranging from 75 to 85 per cent., the nickel from 10 to 18 per cent., and the zinc from 2 to 9 per cent."

The specification asserts that the "invention relates to the production of a substitute for platinum. The object of invention is to produce a composition of matter, known as white gold, that will have the appearance of platinum, and that may be used as a substitute for it, especially in the jewelry trade. It consists of the novel process and product herein described."

The specification then dilates upon the rarity and increasing cost of platinum, the supply thereof being insufficient to meet the demand, and the expense "practically prohibitive."

The process described is to "take gold, especially or preferably fine gold, nickel, preferably pure nickel, and zinc, preferably pure zinc, and fuse them together in a suitable crucible, thoroughly mixing them together while they are thus fused. The resulting composition has the appearance of platinum and * * * is ductile and malleable."

The court below dismissed the bill, and the opinion filed shows that the patent in suit was held "invalid for lack of invention." Plaintiff appealed.

Kenyon & Kenyon, of New York City (Alan D. Kenyon and Douglas H. Kenyon, both of New York City, of counsel), for appellant.

Gifford & Scull, of New York City (George F. Scull and Newton A. Burgess, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Through his counsel, plaintiff thus summarizes his invention: "The claim is for a ternary alloy, composed of three metals only in substantial quantities." The patented alloy has a name; it is called "white gold." But the name as is substantially admitted, even in the disclosure, is old; and the evidence is clear that for many years white gold has been a well-known alloy used by jewelers. Most of it was "14 karat," a cheaper product, while the alloy at bar is "18 karat"; but the evidence is also clear that white gold of that grade of fineness was not a novelty when Belais began to work.

The facts are that, for reasons accentuated by the World War, but existent without it, there was a demand for an "ersatz" platinum. The demand had long existed; the war only increased it. Belais produced an alloy, doubtless carefully prepared; he advertised it widely, and has met with very considerable commercial success.

[1] We dismiss the argument based upon the profitable sales of the alloy. We are still of opinion that "commercial success is an unsafe guide to invention, unless prior efforts to fill the space be shown, * * * and, when they are shown, it is not infrequently found that the faculty of invention was not necessary to fill whatever vacancy existed." Boston, etc., Co. v. Automatic Co. (C. C. A.) 276 F. 910.

Two questions remain: First, whether there exists any technical anticipation of what Belais accomplished; and, second, whether considering the state of the prior art, and the nature of the product—invention exists.

[2] We pass over the first inquiry, although we regard the Hafner use as very persuasive, and shall ground decision, as did the court below, upon noninvention.

Neither as a name nor a thing was "white gold" new when Belais gave his attention to it. It contained copper, which increased ductility and malleability, and it made the alloy softer, but not so white.

We think it true that what Belais did was to reduce the number of elements in his alloy, make it ternary, and increase the proportion of gold, so that he could call it, with reasonable accuracy, "18 karat."

[3] Having done this, the question remains: Did he get a new thing, within the meaning of the statutes, remembering that, although a new result may disclose invention, though there would be no invention in any of the successive steps by which the result is obtained (Tompkins, etc., Co. v. Holden [C. C. A.] 273 F. 424), yet it is not patentable to merely change the shape or form of that which was old (Hayes, etc., Co. v. Friend Co. [C. C. A.] 8 F.[2d] 33).

[4, 5] The broad rule refusing patentability to mere change of form really covers the subhead of alloys, to which this case belongs.

An alloy never mixed before may effect so startlingly new a result as to arrive at even pioneer invention (American Stainless, etc., Co. v. Ludlum, etc., Co. [C. C. A.] 290 F. 103); but ordinarily the rule is that it is the invention of what is new, and not the attainment of comparative superiority or greater excellence in that which was already known, that amounts to patentable invention (Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566).

Applying this to alloys, a "mere difference in the proportions of the constituents of an alloy, however useful the result may be, is not patentable, where the result was reached gradually by experimentation, and the final product differs from those of the prior art only in degree." Brady, etc., Co. v. Ajax Co., 160 F. 84, 87 C. C. A. 240.

Again, an alloy, to be patentable, must not result from "merely figuring out proportions differing from any known before, but there must be shown new results from the new proportions, developing a new metal, or an old metal with new characteristics of structure or performance." Bethlehem, etc., Co. v. Churchward (C. C. A.) 268 F. 361. We do not think this much can be successfully claimed for plaintiff's skillfully advertised alloy, and we therefore affirm, with costs, the decree below.