## FINLEY v. MacDOUGALD CONST. CO.

District Court, N. D. Georgia. December 21, 1927.

No. 223.

1. Patents ⬤═328—Finley, 1,411,777, for method of treating roadways, claim 1, held void for lack of invention and vagueness.

Finley patent, No. 1,411,777, for method of treating roadways having a mineral aggregate wearing surface to which is applied a binding medium, as asphalt, claim 1, the essential feature of which is "applying an extra quantity of binding medium to the lateral marginal edges, in strips of sufficient width to form a curbing," held void for lack of invention; also, for vagueness.

2. Patents ⬤═19—To add more of ingredient to increase its known effect is not invention.

To add more of an ingredient for the purpose of increasing its ordinary and known effect is not invention.

In Equity. Suit by Sam E. Finley against the MacDougald Construction Company. Decree for defendant.

Anderson, Rountree & Crenshaw, Clifford L. Anderson, Granger Hansell, Alston, Alston, Foster & Moise, and Rob't C. Alston, all of Atlanta, Ga., and Chas. F. O'Neill, of Washington, D. C., for plaintiff.

Slaton & Hopkins, J. M. Slaton, Spalding, MacDougald & Sibley, and J. A. Sibley, all of Atlanta, Ga., Ellis Spear, Jr., of Boston, Mass., and Eiffel B. Gale, of Yonkers, N. Y., for defendant.

SIBLEY, District Judge. The critical question is the validity of the patent alleged to have been infringed, being No. 1,411,777, a method for treating roadways. Claims 2 and 3 are admittedly not involved.

[1] Claim 1 is asserted to be void principally for, first, lack of invention; second, vagueness; third, want of utility. It claims broadly a monopoly for "the method of treating roadways which comprises applying a wearing surface course of mineral aggregate to the roadway, applying a uniform coating of binding medium to the entire surface and *applying an extra quantity of binding medium to the lateral marginal edges in strips of sufficient width to form a curbing.*" Patentable invention is claimed for the italicized element of the claim, what precedes being old art. The problem giving rise to the invention is thus described in the specifications:

"In the application of bituminous and similar binding media to the surface of roadways, consisting of broken stone, gravel, or other mineral aggregate, it has been practically impossible to effect a sufficiently uniform and heavy distribution of cementing material at the marginal edges of the roadway or pavement, to enable the wearing material to resist the heavy disintegrating effect of traffic, since, with all the ordinary forms of nozzles, whether they deliver a conical or fan-shaped spray, there is always a sufficient overlap of the applied material to equalize the distribution over the main portion of the roadway, which overlapping and equalization, however, does not prevail at the sides or marginal edges of the road, where the medium is applied by a single nozzle. The result of this mode of application is that the marginal edges of the road or pavement, even where a curb or header is employed, do not receive sufficient binding medium to produce a thorough cementing of the mineral aggregate, or to properly waterproof the said edges, so that the latter will be broken down rapidly by the effects of traffic, or of the weather. The result is that the portions of the roadway which should be the strongest, to wit, the marginal edges, have always proven the weakest, and disintegration of the road surface usually begins and is more pronounced at the edges."

This quotation accurately sets forth the situation according to the evidence which existed, at the date of the invention in 1919, in the art of building bituminous macadam

roads by the penetration method, an art then about 10 years old. To such roads, with asphalt as the binding medium, the patent is specially applicable and to them the evidence relates. It is unnecessary to review it, and make special finding from it, for the case can be disposed of on the face of the patent.

Taking asphalt as a typical binding medium, its purpose in the road is to cement together the stones and to water-proof the road. Knowledge of this function was coeval with its use in road building. The failure of the early built roads at the edges is, in the above quotation from the specifications, said to be due to the want of sufficient asphalt there to accomplish this function; this want being due, in turn, to the apparatus used. This diagnosis is obviously correct, though an additional cause that might be mentioned is the want of lateral support at the edge for the road, where there is no header or shoulder to protect the edge in the mounting of wheels thereon. An improved distributing apparatus was made the subject of another patent.

The remedy proposed in this method patent is more asphalt. No special mode of applying it to the edge, or causing it to stay there, is asserted in claim 1, but only the naked idea of using more. Since the very purpose of using asphalt at all is to cement the stones and water-proof the structure, failure to use enough at the edges would obviously be a cause of weakness in these particulars there, and to use more is the obvious remedy. This suggestion is not invention, nor even skill in the art, but only ordinary intelligence. It can no more be patentable than could the use of two nails where one was found insufficient, or two coats of paint for water-proofing where one had failed, or two sills under a bridge floor where one had broken. To add more of an ingredient, for the purpose of increasing its ordinary and known effect, could never be invention. Bituminous Products Co. v. Headley Good Roads Co. (D. C.) 2 F.(2d) 83.

[2] When surprising and unexpected results are achieved, as has sometimes happened in the alloying of metals, or the treatment of disease by drugs, it might be otherwise. Nor is this a case in which the patentee alone has solved an old problem by a simple expedient. Here the art was recent, and the problem much more so. Others had noted a deficiency of binding medium being gotten at the edge of the road, and an employee of the patentee had used an enlarged nozzle at the edge of the road more than two years before the patent was applied for.

Engineer Neel thought more asphalt the natural remedy for the trouble about two years before the application, and the patentee himself practiced this use for almost two years before he thought it worthy of attempting to patent. While there still appears a difference of opinion as to whether putting more asphalt at the edge than elsewhere is always an advantage, all agree that in 1919 the trouble was putting too little at the edge, and that the obvious remedy was to put enough to accomplish the purpose for which asphalt was used. I think claim 1 void for lack of invention.

It is also void for vagueness. Its call for "an extra quantity of binding medium" at the edge, in the light of the specifications, is ambiguous. It is difficult to say whether what is meant is more than was commonly got at the time the patent was applied for, by the apparatus then used, or more than is used in other parts of the road. In the examination of some of the witnesses, the expression is used as equivalent to an excess, in the sense of too much, and some of the conflict in the testimony as to the utility of the method is explained thereby. I think the fair interpretation is the second meaning, to wit, more than is used in the body of the road. But, even so, while a standard of comparison is thus fixed, no measure of difference is.

It is well known in the art that "too much" asphalt can be used in any part of a road, both from the standpoint of economy and of excellence. If the body of the road is fully loaded with asphalt, more at the edge might be both unnecessary and injurious, as well as expensive. On the other hand, if asphalt be stinted for economy's sake in the bed of the road, evidently more can be used without danger and probably with advantage at the edge. How much more, over what width strip, whether to be applied with, before, or after the uniform application, are unanswered questions, left to the same sort of engineering judgment that the application of *any* more would have been, without the aid of the patent. It seems to me that the patent is only an invitation to experiment with an idea, instead of the disclosure of a definite method of successful procedure.

On the question of utility, much discussed in the evidence, it seems to me quite plain that the adding of more binding medium to correct an insufficient binding is quite useful, if that is the true meaning of the claim, or where the main part of the road is stinted in binding material, the use at the

edges of an additional quantity is, within limits, also useful. This very vigorous fight to annul the patent is powerful evidence that those awarding or those taking road contracts consider the method useful and wish to use it.

On the point of utility I therefore hold with the patent. On the questions of invention and vagueness I hold claim 1 void.