## AMERICAN SALES BOOK CO., Limited, v. AUTOGRAPHIC REGISTER CO.

District Court, S. D. New York.

Dec. 11, 1931.

Duell, Dunn & Anderson, of New York City (Charles Neave, Holland Duell, and David Woodcock, all of New York City, of counsel), for plaintiff.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Thomas J Byrne, both of New York City, of counsel), for defendant.

COXE, District Judge.

This suit involves the Wiswall patent, No. 1,534,478, dated April 21, 1925, for a manifolding book for use in autographic registers. The patent contains nine claims, and all are relied on, but claim 3 may be taken as fairly typical, reading as follows: 3. "A supply pad of the character described, including, in combination, a plurality of record strips folded zigzag, the folds of one interengaged with those of the others so as to provide superposed sets of superposed leaves connected end-to-end, each of two or more of said strips having a longitudinal series of transverse weakened lines and of printed forms, each of said strips having a longitudinal series of feed-arresting strip-registering apertures, the apertures in the respective printed form strips being in similar fixed relation to the forms and also being at such points that those in one strip register with those in the other strip, in successive longitudinally related sets, when the weakened lines are in registry."

The only defense is invalidity.

The plaintiff and the defendant have both been for many years in the business of manufacturing and selling autographic registers, the plaintiff for over twenty-eight years, and the defendant since 1883. The patent relates to the supplies for such registers and not to the registers themselves. Prior to Wiswall, the inventor of the patent in suit, these supplies were in roll form, but in 1923 the plaintiff commenced selling flat stationery, and the defendant followed in 1924. The patent was applied for May 24, 1921, but did not issue until April 21, 1925, or after both plaintiff and defendant had started to produce and sell flat supplies. The plaintiff's flat stationery is marketed under the name of "Flatpakit," and the defendant's as "Flat Packet Stationery."

From its first introduction in 1923, flat stationery for autographic registers enjoyed a conspicuous commercial success, and the plaintiff's sales figures for the years following 1923 have demonstrated conclusively the utility and merit of the product. Indeed, the commercial success has been so pronounced that the plaintiff's sales of roll supplies are now negligible; the flat stationery having completely superseded the roll type supplies in so far as the plaintiff is concerned. With the defendant, the story is much the same, except that its roll supplies are still in some demand, the relative proportions of the two kinds of supplies being 75 per cent. flat stationery, and 25 per cent. roll supplies. I

think it is clear, therefore, on the basis of this record that the flat supplies have practically crowded the old roll supplies off the market.

█ But does the Wiswall patent disclose invention? The commercial success of the product is something which may properly be considered in answering that question, but it is not necessarily determinative. Minerals v. Hyde, 242 U. S. 261, 270, 37 S. Ct. 82, 61 L. Ed. 286; David Belais, Inc., v. Goldsmith Bros. Smelting & Refining Co. (C. C. A.) 10 F.(2d) 673, 674. Rather is it important to ascertain "what the prior efforts to fill the space" were, and the extent of the advance made by Wiswall. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (C. C. A.) 276 F. 910, 911.

The autographic register art had its inception in 1883, when Major Shoup, the founder of defendant's business, produced the first autographic register; and since then various improvements have been made in the machine designed to increase its efficiency, the most important being the paper feeding device of Shoup and Oliver, covered by patent No. 1,396,070, dated November 8, 1921. This patent was originally issued to the defendant as assignee of the inventors, Shoup and Oliver, and the plaintiff holds a conditional license under it from the defendant.

During all the years prior to 1924 that the defendant was experimenting with the register itself in an effort to improve its efficiency, the only supplies used were in roll form, and these had all of the defects and disadvantages of that type of product. It is clear, now, in the light of what has subsequently transpired, that the trouble was not with the machine but with the stationery; yet none of the defendant's experts appreciated that fact, and it was not until Wiswall showed the way with his flat supplies that the problem was apparently solved.

The primary purpose of an autographic register is to provide a reliable duplicate copy of the original sales slip or memorandum which has previously been detached and given to the customer. It is essential, therefore, that there be proper alignment between the different slips; and it is necessary, also, that the duplicate copy be readily available for examination as occasion may require.

With roll type supplies, the register was first loaded with the requisite number of rolls desired, and then the strips were fed over the platen; the top strip being used for writing, and those underneath being supplied with superposed carbon sheets to enable the writing to be transferred to them from the top sheet. After the completion of the writing, all but the bottom sheet were torn off, and this latter was rewound on a spool kept in a locked compartment. The rewound spool served as a file record for ready reference in case of dispute or otherwise.

The disadvantages of roll type supplies were many and obvious, the principal being: (1) The inconvenience of handling, and the excessive time required to load the register; (2) the tendency of the forms bearing the same numbers in the different strips to get out of sequence during operation; (3) the inaccessibility of any particular form in the storage roll for auditing or comparison; (4) the inherent curl of roll stationery, and the trouble in handling.

All of these disadvantages were pointed out at the trial; and the defendant itself in its sales literature, extolling the merits of flat stationery, has for a number of years insistently and persuasively dwelt upon them. Surely no stronger tribute to the advance made by Wiswall can be found than in this collection of sales pamphlets put out by the defendant; and it shows unmistakably that the defendant early recognized, what now seems quite obvious, that Wiswall had accomplished something "of major importance" in the autographic registry art. Van Heusen v. Earl & Wilson (D. C.) 300 F. 922.

In place of the clumsy and unsatisfactory rolls of the prior art, Wiswall substituted superimposed, interengaged, zigzag, folded strips of printed forms, separated by weakened fold lines, each form having longitudinal "feed-arresting, strip-registering apertures," such apertures being in substantial registry with the apertures of other forms in the same set, and also with the apertures in alternate sets of forms depthwise of the pad. These feed-arresting apertures were arranged in pairs, properly positioned crosswise of the pad to coact with the disks of the register.

The forms are thus held in substantial registry, one with another, and are fed into the machine in proper sequence, each set being advanced as a unit by means of the feed rolls in the machine and the "feed-arresting strip-registering apertures" of the forms. In this way, Wiswall has overcome most of the defects of the old roll supplies, and for the first time has given accessibility to the record file. Furthermore, the provision of an interfolded pack has done away entirely with

the spindles and auxiliary parts, and has much simplified the work of the operator in tending the machine.

■ The closest patent references cited by the defendant in support of its claim of invalidity are Copeland (1894) No. 513,558, and Bentel (1899) No. 626,665, but neither of these patents has the feed-arresting strip-registering apertures of the patent in suit. Copeland shows an autographic register with a compartment for receiving a pack or book of paper in zigzag folded form. His paper has weakened folded lines, and is folded much the same as in the Wiswall patent, but his construction could not be used with the disk feed, and has none of the essential features of plaintiff's flat stationery. Similarly, the Bentel patent has little application except to show the use of three strips of paper, divided longitudinally by transverse perforation lines, and capable of being folded zigzag into a compact pad or pack. The holes in the different sections are, however, for filing purposes, and perform no such function as the apertures of the Wiswall patent. In short, I find nothing in either Copeland or Bentel to anticipate or destroy the validity of the patent in suit.

■ The defendant insists, however, that its own prior printed and apertured strips, as used in the Shoup and Oliver machine since 1915, could readily have been folded in zigzag fashion, as taught by Bentel, and that this would have produced the Wiswall pack. It is, I think, a sufficient answer to this contention that the defendant, with all of its experimentation in this particular field, never did see the utility of flat supplies for use in the Shoup and Oliver machine until Wiswall pointed the way by the patent in suit. And wisdom after the event has always been ineffectual to invalidate a patent. Regent Mfg. Co. v. Penn Electrical & Mfg. Co. (C. C. A.) 121 F. 80, 83; General Electric Co. v. Laco-Philips Co. (C. C. A.) 233 F. 96, 105. Moreover, the very fact that Copeland and Bentel were so long available, and no one saw their application, only emphasizes the importance of Wiswall's contribution. George Frost Co. v. Cohn (C. C.) 112 F. 1009. This is well illustrated by the Sherman patent, No. 1,416,129, applied for April 10, 1919, and issued May 16, 1922. Sherman was a contemporary worker with Wiswall, and yet he failed utterly in his attempt to adapt the zigzag packs of Copeland and Bentel to make them available for autographic registers. It never occurred to him to use an interfolded pad, and the nearest he came to Wiswall was

to substitute for the individual rolls of the prior art a number of individual zigzag folded pads; and when the Wiswall patent appeared even this Sherman method was discarded and became obsolete.

■ It is further asserted by the defendant that all that Wiswall did was to put the triplicate forms of the Shoup and Oliver patent to a new use, and that this did not constitute invention under the doctrine of Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267. It is perfectly apparent, however, that Wiswall did do something radically different from Shoup and Oliver, in that he substituted an interfolded pack in place of the old roll stationery, and made it work in an autographic register. I think this constituted invention.

The plaintiff is, therefore, entitled to a decree holding all of the claims valid and infringed.