## ARO EQUIPMENT CORPORATION v. HERRING–WISSLER CO. *

## HERRING–WISSLER CO. v. ARO EQUIPMENT CORPORATION.

### Nos. 10490, 10494.

Circuit Court of Appeals, Eighth Circuit.
July 6, 1936.

Lynn A. Williams, of Chicago, Ill. (Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., and Bair, Freeman & Sinclair, of Des Moines, Iowa, on the brief), for Aro Equipment Corporation.

Leonard L. Kalish, of Philadelphia, Pa. (Talbert Dick, of Des Moines, Iowa, on the brief), for Herring-Wissler Co.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

There are here an appeal and a cross-appeal from a decree entered in a suit for infringement of a patent which held the patent invalid for lack of invention; and held, further, that the license set up as one of the defenses had not been proven.

The patent in controversy is United States patent No. 1,918,833 to John F. Carter, assigned and issued to plaintiff, the Aro Equipment Corporation, application filed November 11, 1931, patent issued July 18, 1933, for a "Power unit for individual lubricant guns."

The complaint is in conventional form, as also is the answer, except that in addition to the usual defenses, there is set up what may be briefly termed a license.

The case was tried in January, 1935: on February 7, 1935, the court made and filed its findings; and on February 13, 1935, a decree was entered, which is set out in the margin.[1]

---

[1] "Final Decree.

"Filed in U. S. District Court, Feb. 13, 1935.

"This cause having come on to be heard upon pleadings and proofs, and having been argued by counsel and the Court being advised, it is now

"Ordered, Adjudged and Decreed:

"1. That the Carter patent No. 1,918,-833, in suit, is invalid at law.

"2. That the Bill of Complaint be and the same hereby is dismissed upon its merits, with costs.

"Chas. A. Dewey.
"Des Moines, Iowa, February 13, 1935."

*Rehearing denied Aug. 24, 1936.

A petition for rehearing, and an application and amendment thereto for an order to reopen the case were made and denied; but on April 13, 1935, there was entered a final decree reading as follows:

"This cause having come on to be heard upon pleadings and proofs, and having been argued by Counsel, and the Court being advised, it is now

"Ordered, Adjudged and Decreed:

"1. That the Decree heretofore entered on February 13, 1935, is vacated.

"2. That the Carter patent, No. 1,918,833 in suit, is invalid at law.

"3. That the defense of license pleaded and urged by the defendant has not been established.

"4. That the Bill of Complaint be and the same hereby is dismissed upon its merits, with costs.

"Done at Des Moines, Iowa, this 13th day of April, 1935.

"Chas. A. Dewey, Judge."

The second decree was entered at the same term as the first.

From the second decree plaintiff has taken an appeal, having particular reference to paragraphs 2 and 4 thereof; defendant has taken a cross-appeal, having particular reference to paragraphs 1 and 3 thereof.

The main question involved in the appeal is whether the patent was invalid for lack of invention.

The main question involved in the cross-appeal is whether defendant had a license.

The patent contains twenty claims, all of which are alleged to be infringed.

Claim 6, which may be taken as typical, reads as follows: "In a device of the class described, a lubricant gun comprising a discharge nozzle, a cylinder, and a lubricant expeller plunger for expelling lubricant from said cylinder in combination with a power unit for said lubricant gun detachably connected therewith and comprising a cylinder, a power piston therein for engagement with said lubricant expeller plunger and means for admitting fluid pressure to said last mentioned cylinder to move said power piston and thereby said lubricant expeller plunger when in one position and for allowing exhaust of fluid pressure therefrom when in another position, said lubricant gun including spring means to move said lubricant expeller plunger and said power piston to cause such exhaust of air from the power unit."

It is apparent that this is a combination claim, consisting, broadly speaking, of a power unit and a grease gun unit. Each of these units is, in turn, made up of several elements; the power unit includes a cylinder, a piston, means for admitting fluid pressure into the cylinder, means for moving the piston back to original position. The grease gun includes the elements of a cylinder, a piston or plunger, a grease reservoir, a discharge nozzle.

The power unit and its several elements were old in the art long prior to the issue of the Carter patent. The grease gun unit and its several elements were old in the art long prior to the issue of the Carter patent.

The combination of the two, i. e., the air-powered (as distinguished from hand-powered) grease gun was also old in the art prior to the issue of the Carter patent. The Goddard patent (United States patent 1,787,783), and the Butler patent (United States patent 1,690,923), both clearly show this state of facts to be true; and we do not understand that this is seriously disputed at the present time. The combination was nothing more than a tool driven by a motor; the motor being disconnectible from the tool.

It is true that Carter, in the specifications of his patent, makes the statement: "Heretofore such lubricant guns have been entirely operated by hand. * * *"

But we do not understand that this statement is pressed in the present suit.

Thus Carter had accessible, when he made his alleged invention, knowledge of the power unit and its elements, knowledge of the grease gun and its elements, and knowledge of the combination of power unit and grease gun.

In what, then, did the alleged invention of the Carter patent consist?

In the brief of Carter's counsel in the case at bar, we find these statements:

"Carter evolved the wholly new idea of going right into the heart of the assembled machinery and cutting it abruptly in two. He completely severed the pumping machinery from the power machinery in such a way as to produce two separate units, namely a power unit which could be quickly detached from a completely severable pumping unit. Instead of making the inert grease reservoir detachable from the grease pumping mechanism, he combined the reservoir permanently with the rest of the grease pumping machinery.

"* * * The reciprocating piston of the power unit was arranged to press or push against the exposed end of the pump rod or plunger in such a way that a forward reciprocation of the power piston would give the pump rod a correspondingly forward push."

In other words, it is claimed that Carter, by his alleged invention, did two things: (1) He made the power unit easily detachable from the rest of the assembled mechanism; (2) he made a severance in the assembled mechanism so that the power unit was kept separate from the pumping apparatus attached to the grease gun reservoir. This latter feature enabled a single power unit to operate successively any number of grease gun units with pumping apparatus attached, without getting the several lubricants mixed with one another.

Patents of the prior art, and evidence relative thereto, have been introduced in evidence, not as showing anticipation of the Carter patent, but solely as showing that there was lack of invention in what Carter did.

The trial court held that the Carter patent was invalid for lack of invention.

██ The assignments of error by the appellant, the Aro Equipment Corporation, attack the decree, but do not attack specifically the findings.

Counsel for appellee in their brief make this statement: "The appellant having submitted no request for findings of fact and having taken no exceptions to, nor assigned for error, any of the lower Court's findings of fact, appellant is bound by such findings of fact and all of the logical inferences based thereon and therefore there is not available to the appellant any argument based on any alleged error or insufficiency in the lower Court's findings of fact."

We cannot agree with this statement. An appeal in equity brings before the appellate court the whole record, and the court is required to examine the record and try the case de novo. The findings of the trial court, while entitled to great weight, may be adopted or discarded by the appellate court, even though supported by substantial evidence.

In Keller v. Potomac Electric Power Co., 261 U.S. 428, at page 444, 43 S.Ct. 445, 449, 67 L.Ed. 731, the court said: "In that procedure [equity], an appeal brings up the whole record and the appellate court is authorized to review the evidence and make such order or decree as the court of first instance ought to have made, giving proper weight to the findings on disputed issues of fact which should be accorded to a tribunal which heard the witnesses. This court is therefore given jurisdiction to review the entire record, and to make the order or decree which the commission and the District Courts should have made."

In Mt. Vernon Refrigerating Co. v. Fred W. Wolf Co. (C.C.A.) 188 F. 164, at page 168, the court said: "The rule obtaining on writs of error that, when there is any material evidence tending to support the verdict of a jury, the appellate court will not review the evidence, does not obtain in equity cases which come up on a broad appeal."

In Presidio Mining Co. v. Overton (C.C.A.) 270 F. 388, the court held that while proper consideration will be given to the findings below, an equity case is triable de novo upon appeal under the new equity rules, especially where the evidence is chiefly documentary and the oral testimony of witnesses largely uncontradicted.

In Swift v. Jackson (C.C.A.) 37 F.(2d) 237, it was held that an appeal in equity brings up the entire record, and the appellate court has full power to make and enter its own decree in the cause.

In Laursen v. Lowe (C.C.A.) 46 F.(2d) 303, 304, the court said: "While much weight is ordinarily, and rightly, given to the opinion of the trial judge who has seen the witnesses upon the stand, noted their demeanor, and heard them testify, yet in an equity appeal the obligation is imposed upon this court of reviewing the record, weighing the evidence, and determining as best we may whether the plaintiff has sustained the burden of proof resting upon him."

In Lewis v. Ingram (C.C.A.) 57 F.(2d) 463, 466, it was said that on appeal in equity "the record is before us, with the trial court's finding * * * after seeing the witnesses; from that, we make such disposition of the cause as accords with equity and good conscience."

And for a discussion of Equity Rule 46½ in admiralty cases which is analogous to Rule 70½ in equity cases, see McCrea v. United States, 294 U.S. 382, 383, 55 S.Ct. 443, 79 L.Ed. 933, and the very recent case in the Ninth Circuit, Broughton & Wiggins Navigation Co. v. Hammond Lumber Co. (C.C.A.) 84 F.(2d) 496, decided June 10, 1936.

622

We are at liberty, therefore, to take up for consideration any part of the record before us.

It is in the second feature of what Carter did that invention, if any, resides. We think this is so because Goddard, in his patent No. 1,787,783, had so far solved the first feature, that of easy detachability (making it possible for one power unit to be used successively and quickly with a number of grease guns), that what Carter did, in differentiation from Goddard, could not be claimed as an invention.

The second feature of Carter's alleged invention was that of making the severance between the power unit, on the one hand, and the combined pumping element and grease reservoir, on the other hand. That this was meritorious may be conceded; that it has been widely adopted may also be conceded. But did the step which was taken constitute invention?

The problem was to make the same power unit serve successively several grease guns containing different lubricants. There were three elements to be considered; the power unit, the grease gun reservior, and the pumping apparatus operated by the power unit and operating upon the grease gun reservoir.

In the prior art, before specialized lubrication became common, these several elements were used together, and the point of detachability was not of vital importance. But with the advent of specialized lubrication, and the added inducement of economy, the point of detachability became of considerable importance. A severance leaving the power unit attached to the pumping element of the grease gun would not answer the purposes of specialized lubrication, because it would result, after using the first lubricant, in a mixing of the lubricants in the pumping element.

The plain alternative was a severance between the power unit and the pumping element of the grease gun. By making the piston of the power unit operate the piston of the pumping element of the grease gun by a pushing contact therewith, instead of by a rigid connection, the problem was rendered easy. Was the making of this change invention?

The structure disclosed by the prior art, Butler patent No. 1,690,923, shows that changes could be easily made in that structure by an ordinary mechanic, which would bring it within the requirements of the Carter patent.

Suggestions of a similar nature are to be found in connection with Defendant's Exhibits 7, 8, and 9 of the prior art, supplemented by the testimony of the witness L. L. Gray.

With the problem clearly defined, and with the disclosures of the Goddard patent, the Butler patent and Defendant's Exhibits 7, 8, and 9 at hand, Carter made the changes in the assembled mechanism which became the foundation for the application in connection with the Carter patent. Was there invention in what he did?

There is no strict formula to determine what constitutes invention. See Atlantic Works v. Brady, 107 U.S. 192, 205, 2 S.Ct. 225, 27 L.Ed. 438; McClain v. Ortmayer, 141 U.S. 419, 427, 12 S.Ct. 76, 35 L.Ed. 800.

This court, in the case of Tropic-Aire, Inc., v. Sears, Roebuck & Co., 44 F. (2d) 580, has reviewed many of the cases and laid down certain principles in regard to invention and patents which are binding in this circuit. Among them are the following:

"New thoughts, merely involving working out of mechanical skill to produce result, are not patentable.

"Patent must be creation of inventive faculty and imagination, with something more than is obvious to persons skilled in art.

"Mere novelty and utility is not invention and cannot be substitute therefor.

"Ingenuity does not constitute invention."

We think that case is controlling here, and that in accordance with the principles there enunciated, the changes which Carter made in the prior art did not rise to the dignity of invention.

In reaching this conclusion we have not overlooked the success of the Carter structure in meeting a persistent want, nor of the commercial success of the patent. These are evidence of the merit of the Carter structure, but are not conclusive of its patentability.

In the Tropic-Aire Case, above cited, the court said:

"Commercial success may only be resorted to as evidence of invention where other facts leave question in doubt.

"Commercial success cannot supply inventive genius to device that has none, since ability to sell is not inventive genius."

The finding of the trial court is accordingly affirmed, and the Carter patent is held invalid for lack of invention.

In the view we have taken of the validity of the Carter patent, it becomes unnecessary to discuss the question whether defendant had a license under that patent.

We have, however, considered the evidence and conclude that the trial court was right in holding that the license was not established by the evidence.

Decree of the trial court is affirmed.