892

Ben C. Grosscup, of Seattle, Wash. (William H. Davis and Merton W. Sage, both of New York City, of counsel), for appellant.

Battle, Hulbert, Helsell & Bettens, of Seattle, Wash. (Merrell E. Clark, of New York City, of counsel), for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant's bill of complaint charged appellee with infringing a patent owned by appellant, and prayed for an injunction restraining further infringement thereof and for an accounting of profits and damages. Appellee's answer pleaded invalidity of the patent and denied the alleged infringement. On final hearing, the District Court held the patent invalid for lack of invention and for lack of novelty and, accordingly, entered a decree dismissing the bill. This appeal is from that decree.

The patent in question was applied for by Albert E. Greene on January 2, 1909. Greene's application was pending in the Patent Office for a period of sixteen years, during which it was amended fourteen times. This much-amended application was finally granted, and the patent here in question, No. 1,532,052, was issued to appellant, as Greene's assignee, on March 31, 1925. It is for an alleged improvement in the treatment of iron or steel in electric furnaces. The specification states:

"* * * The invention has for its object the provision of an improved electric furnace process for treating iron or steel in the course of which impurities, such as sulfur, phosphorous and oxygen, are removed therefrom, principally as a slag, either singly or together, and in such manner as to leave the iron or steel in a purified and deoxidized condition.

"In the making or refining of steel in electric furnaces prior to this invention, the usual method has been to make the lining or hearth of the furnace of basic material, such as burnt magnesite or dolomite, the roof being of silica brick. The slag used has been highly basic,[1] containing—say about 15 percent. of silica, and requiring a considerable addition—say 30 percent. of fluorspar to act as a flux. * * * I have found, however, that by using a slag containing a comparatively high percentage of silica, the sulfur content of the metal may be reduced to practically the same extent as before and considerable economies are effected in the operating of the furnace and also an improvement secured in the quality of the steel produced.

"My invention, accordingly, involves treating iron or steel in a basic electric furnace by applying thereto a slag comprising lime and silica approximately in such proportions as to form a neutral mixture, that is, a mixture that is neither strongly acid nor strongly basic,[2] and maintaining the metal and slag molten under reducing conditions. The actual percentage of silica in the slag will vary considerably for different materials and circumstances, but·

---

[1] Its "basic" ingredient was lime.

[2] Silica is "acid"; lime is "basic."

will generally be between 25 and 35 per cent. of the total weight of the slag. * * *

"An important feature of the present invention resides in the modification of the heretofore customary highly basic slag by the addition of a relatively high percentage of silica, thereby giving the slag a considerably lower melting point, rendering it more fluid and facilitating its refining action. This feature results in a very material saving in electrical energy over what would be required to melt a straight lime or highly basic slag. * * *

"The process of the invention is of particular advantage in the manufacture of soft or low carbon steel. The greater or less quantity of nascent silicon[3] which enters the bath[4] serves to purify it and in a way to make up in purifying effect for the lack of carbon in the bath. The silica in the slag may be so proportioned that the quantity of nascent silicon which enters the bath shall be only sufficient to have a purifying effect and shall not be sufficient to leave any appreciable percentage of silicon in the finished product."

This patent contains ten claims, all of which are in suit. With the exceptions hereafter noted, the ten claims are identical. Claim 6 reads: "The method of treating iron or steel which consists in [a] applying thereto a slag comprising lime and silica and maintaining the metal and slag molten on a basic hearth in an electric furnace [b] under reducing conditions, [c] the quantity of silica being about 25 to 35 per cent. of the total weight of the slag."

The introductory words of claims 4 and 5 are: "In the making of soft or low carbon steel the method which consists in applying to the bath a slag comprising * * *."

Element [a] of claim 6 appears in all the claims.

In claims 1, 2, 3, 4, and 5, element [b] of claim 6 is omitted. In claims 8 and 10, element [b] reads: " * * * while subjected to the action of a reducing agent."

In claims 2 and 7, element [c] reads: " * * * the lime and silica being approximately in such proportions as to form a neutral mixture, that is, a mixture which is neither strongly acid nor strongly basic." In claims 3 and 8, element [c], reads:

" * * * the percentage of silica in the slag being sufficient to practically avoid formation of fumes of lime in the furnace." In claims 4 and 9, element [c] reads: " * * * the percentage of silica in the slag being so high that silicon is reduced therefrom and enters the bath in nascent condition." In claims 5 and 10, element [c] reads as in claims 4 and 9, with the added words: " * * * in sufficient quantities to remove impurities to a substantial extent but not in sufficient quantities to appear in an appreciable percentage in the finished product."

It is conceded, as it must be, that, in the art of treating iron or steel, the method which consists in "applying thereto a slag comprising lime and silica and maintaining the metal and slag molten on a basic hearth in an electric furnace under reducing conditions" was well known and in common use long prior to Greene's alleged invention. This is apparent from the specification quoted above, and is established by uncontradicted evidence. Appellant's brief states: "It is conceded that the properties of these three slag constituents, or fluxes [lime, silica and fluorspar], were well known long prior to any date significant here. The metallurgist had these fluxes of known properties to choose from according to the conditions that confronted him."

Greene's alleged discovery was that the desired result—removal of sulphur and other impurities from iron or steel—might be accomplished more effectively and more economically by increasing the percentage of silica in the slag used for that purpose. Appellant's brief states: "In November, 1908, Greene discovered empirically by experiment that under well maintained reducing conditions the extensive removal of sulphur was preserved even when the amount of silica in the slag was practically doubled and that thereby economy was effected and an improved quality of steel resulted."

This result, appellant says, "is brought about by the action of the increased silica content of the slag in converting the more difficultly reducible ferric oxide ($Fe_2O_3$) to the more easily reducible ferrous oxide (FeO), thereby facilitating the removal of iron-oxide from the slag and correspondingly increasing the effectiveness of the re-

[3] Silicon is an element of silica. Free silicon may be obtained by heating silica in an electric furnace. This, at the mo-

[4] The "bath" is the molten metal to which the slag is applied.

894

ducing action." This, if true, was apparently unknown to Greene. He never mentioned it in his specification or claims. It appears to have been discovered by appellant's expert witness, who, under cross-examination, admitted that the effect attributed by him to the "increased" silica content of the slag begins as soon as *any* silica is added to a lime slag, and "will increase with silica additions," thus, in effect, admitting that the results obtained differ only in degree.

All that Greene discovered or claimed to have discovered was that, by changing the proportions of the usual slag constituents, increasing one and decreasing the other, a better result could be accomplished; this result differing only in degree from that of the prior art. Such a discovery is not patentable. Zenitherm Co. v. Art Marble Co. (C.C.A.5) 56 F.(2d) 39, 42; Finley v. MacDougald Construction Co. (C.C.A.5) 28 F.(2d) 674, 675; David Belais, Inc., v. Goldsmith Bros. Smelting & Refining Co. (C.C.A.2) 10 F.(2d) 673, 675; Bethlehem Steel Co. v. Churchward International Steel Co. (C.C.A.3) 268 F. 361, 364; Brady Brass Co. v. Ajax Metal Co. (C.C.A.3) 160 F. 84, 90.

It cannot be said that Greene discovered the previously unknown source of a known difficulty and prescribed, as a remedy therefor, something previously used for another purpose, as in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 68, 43 S.Ct. 322, 67 L.Ed. 523. Here, the difficulty and the source thereof were known, and the remedy which Greene prescribed had been applied thereto, long prior to the date of his alleged discovery.

This case comes clearly within the principle, so often declared, that "a mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent." Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 292, 37 S.Ct. 502, 505, 61 L.Ed. 1136; Market Street Cable Ry. Co. v. Rowley, 155 U.S. 621, 629, 15 S.Ct. 224, 39 L.Ed. 284; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U.S. 100, 107, 14 S.Ct. 492, 38 L.Ed. 370; Roberts v. Ryer, 91 U.S. 150, 159, 23 L.Ed. 267; Smith v. Nichols, 21 Wall. 112, 119, 22 L.Ed. 566.

In reaching this conclusion, we have considered all evidence offered by appellant, including that which the trial court excluded. Thus a review of these rulings becomes unnecessary.

Decree affirmed.