**FREDERICK STEARNS & CO. v. GROVE'S LABORATORIES, Inc.**

**No. 10743.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 3, 1937.

Clarence B. Zewadski, of Detroit, Mich. (Bruninga & Sutherland, of St. Louis, Mo., on the brief), for appellant.

William K. Small, of St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This is a suit for infringement of United States Letters patent No. 1,890,860 for a "therapeutic agent," applied for by Allen L. Omohundro on March 22, 1930, and issued to Frederick Stearns & Co., his assignee, on December 13, 1932. The court below concluded that the subject matter of the patent did not involve invention and was not novel, that the applicant was not the first inventor, and that the alleged invention was known to and published by others prior to its conception by the applicant. From a decree dismissing the complaint, this appeal is taken.

The appellant claims that Omohundro was the first to discover that an emulsion nose drop containing a vaso-constrictive drug such as epinephrine (adrenalin), ephedrine or synephrin, which drugs contract the blood vessels, thereby relieving congestion of the nasal tissues, was superior to other nose drops. It is not claimed that emulsions as carriers of medicaments to the surfaces of the human body were new, nor is it claimed that vaso-constrictive drugs were new. It is claimed that the combination of the two produced a new and useful product.

The appellant makes and sells an oil-in-water emulsion nose drop containing synephrin. The appellee makes a similar nose drop containing ephedrine in a water-in-oil emulsion. Each advertises its product as having similar qualities and as being superior to other nose drops.

The appellant had great difficulty in convincing the Patent Office that Omohundro's discovery amounted to invention. During the prosecution of the patent, the claims applied for were thrice rejected on the ground that the incorporation of a medicine in an emulsion was common practice and not invention. Finally, after an "oral interview" with the Examiner, four claims were allowed, limited to vaso-constrictive drugs in an emulsion.

The claims in suit read as follows:

"1. A composition for application to mucous membranes of the nose, mouth and the respiratory system comprising a liquid in liquid emulsion, one of said liquids being oil and the other of said liquids being water, and a therapeutic substance having vaso-constrictive action dissolved in one of the phases of said emulsion, said composition having a low interfacial tension between the dispersion phase of said emulsion and aqueous mucous membrane and said composition being characterized by its freedom from unpleasant reaction when applied to aqueous mucous membrane.

"2. A composition for application to mucous membranes of the nose, mouth and the respiratory system comprising a liquid in liquid emulsion and a substance dissolved in one of the phases of said emulsion having vaso-constrictive action and comprised within the class of substances including epinephrine, ephedrine, synephrin and compounds thereof."

It is clear that it was not originally the intention of the applicant that his claims should be limited to an emulsion containing vaso-constrictive drugs. He stated in his specifications that his invention "in its broader aspects" included emulsions in

which the active medical agent may be an astringent, antiseptic, germicide, or anæsthetic. Some of his original claims covered such emulsions. What the applicant evidently thought he had discovered was that liquid-in-liquid emulsions were better vehicles for carrying certain medicaments to the mucous membranes of the respiratory system than other forms of solution. Prior to Omohundro, vaso-constrictive drugs were commonly used in nose drops, but solutions carrying them were ordinarily water, oil, jellies, or ointments. Aqueous solutions caused a stinging sensation when applied to membranes, and their effect was fleeting. Oil solutions did not sting, but did not mix with the watery exudations of the membranes and had a tendency to run out of the nose. Jelly solutions, unless mucilaginous, did not mix well with the aqueous membranes and did not cover large areas. Emulsion nose drops were free from many of the objectionable features of other nose drops, mixed well with the aqueous secretions of the membranes of the nose, and remained longer in place upon the membranes, and produced better results.

This case is closely analogous to that of Donner v. Sheer Pharmacal Corporation (C.C.A. 8) 64 F.(2d) 217. The controlling rules of law are stated in the opinion in that case, and will not be repeated. Donner had invented a depilatory cream by incorporating an old and well-known depilating agent in a colloid or colloid-like substance capable of holding the depilating liquid in stable suspension. The trial court thought that what Donner had done was to convert a liquid into a cream, and that this represented nothing more than the expected skill of his calling. The record in that case indicated that depilating liquids were chemically active and that the problem of finding a colloid or colloid-like substance which would carry them in stable suspension in the form of a cream was an old problem, difficult of solution. We held that the subject matter of the Donner patent constituted invention, but said (page 222 of 64 F.(2d): "If these liquid depilatories were inert and inactive and could as readily be incorporated into a cream as water or other inert and inactive liquids, the situation would be very different."

That statement, we think, clearly distinguishes this case from the Donner Case. Here the record shows that it was common practice among pharmacists to use emulsions to carry drugs for application to body surfaces, that oil-in-water emulsions had been so used for more than a hundred years, and that, while water-in-oil emulsions were not as common or as easy to make, they were well known to the art prior to Omohundro.

United States patent No. 1,743,992, issued to Stuart on January 14, 1930, covers a solution of ephedrine in an oil base for application to nasal passages. The conversion of this nasal solution into an emulsion nose drop by adding water and some well-known emulsifying agent would not seem to require more than the expected skill of a pharmacist.

United States patent No. 1,611,190, issued December 21, 1926, to Hartmann, entitled "Emulsion of Medicaments Soluble in Oil and Process for the Manufacture of the Same," relates to the preparation of stable oil-in-water emulsions containing various drugs, including camphor, guaiacol, and eucalyptol. Camphor is an astringent and probably a vaso-constrictive drug. The substitution of ephedrine or synephrin for camphor in Hartmann's emulsion, for use in the nasal passages, we think, would not rise to the dignity of invention.

"New and Nonofficial Remedies," published in 1928 by the American Medical Association, contains a formula for adrenalin and chloretone ointment, in which the drug adrenalin (epinephrine) is carried in a base of hydrous wool fat and petrolatum. This base is apparently in the nature of a water-in-oil emulsion. Whether an emulsion is ever a solid or a semisolid substance seems to be a question about which the experts who testified in the case are not in harmony. Even if we assume that an emulsion can never be a semisolid and that the adrenalin ointment is a semisolid, we think that the converting of a semisolid ointment in the nature of an emulsion to an emulsion would not constitute invention.

The other patents and publications in evidence relating to the state of the art at the time of Omohundro's discovery we shall not discuss.

The evidence shows that Burbage, a Philadelphia pharmacist, made and sold a nasal emulsion or nose drop as early as 1924, under the name "Southern Nasal Emulsion." This was an oil-in-water emulsion of the type employed by the appellant. The medicinal agents incorporated in it were creosote, oil of eucalyptus, echin (echinacea), camphor, and menthol water. The echin and camphor were astringents and

were used in the emulsion for the purpose of relieving congestion of the nasal tissues. The appellant contends that Burbage is not worthy of belief, that his testimony is not sufficiently supported, and that, in any event, his nasal emulsion is not the full equivalent of that of appellant. Burbage was apparently a disinterested, unimpeached, and credible witness whose testimony is, to some extent at least, corroborated by his records and by the production of a bottle of his product which he says he made in 1924.

The testimony of Burbage clearly demonstrates that it was common practice among pharmacists to use emulsions for carrying drugs whenever equally satisfactory solutions could not be made with water, oil, or alcohol. Whether the Burbage nose drop constituted a complete anticipation of the Omohundro discovery or not—nothing but the skill of the ordinary pharmacist was required to convert the Burbage nasal emulsion into the appellant's nasal emulsion by using a vaso-constrictive drug in the place of the medicaments resorted to by Burbage for accomplishing the same general purpose of relieving congestion in the nose.

■ It is not invention to produce a composition of matter which any skillful pharmacist would produce whenever required to effectuate a given result. Walker on Patents (6th Ed.) vol. 1, p. 71, § 62.

"The selection from known equivalent materials of one which does the work better than others previously used and known does not amount to invention, when the difference is only one of degree." Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C.C.A. 8) 16 F.(2d) 446, 448.

"It is the invention of what is new, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property and which it secures by patent." Smith v. Nichols, 21 Wall. 112, 22 L.Ed. 566; Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C.C.A. 8) 16 F. (2d) 446, 449.

See, also, Tropic-Aire, Inc., v. Sears, Roebuck & Co. (C.C.A. 8) 44 F.(2d) 580, 589-592; Aro Equipment Corporation v. Herring-Wissler Co. (C.C.A. 8) 84 F.(2d) 619, 622; Tiemann v. Kraatz (C.C.A. 8) 85 F. 437, 439.

Our conclusion can be stated in the language of the Supreme Court in the case of Berlin Mills Co. v. Procter & Gamble Co., 254 U.S. 156, 166, 41 S.Ct. 75, 78, 65

L.Ed. 196: "To supply such products as the patentee has described in the broad claims in suit may have been new and useful, but does not in our opinion rise to the dignity of invention, and is an advance step which would occur to one skilled in the art, when investigating and considering the subject."

■ In reaching this conclusion, we have not disregarded the commercial success of the appellant's nose drop. Commercial success, however, may not be resorted to as evidence of invention unless that question is in doubt. Aro Equipment Corporation v. Herring-Wissler Co. (C.C.A. 8) 84 F.(2d) 619, 622.

The decree appealed from is affirmed.